**Michael Shawn BEHELER, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–98–475–CR.**

Court of Appeals of Texas, Fort Worth.

Sept. 16, 1999.

Jerry J. Loftin and Earl Waddell III, Fort Worth, for Appellant.

Tim Curry, District Attorney, Charles M. Mallin, Edward L. Wilkinson, Jay Lapham, and Lettie Martinez, Assistant District Attorney, Fort Worth, for Appellee.

PANEL A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION

SAM J. DAY, Justice.

A jury convicted Michael Shawn Beheler of aggravated sexual assault and assessed punishment at 60 years' confinement. On appeal, Beheler alleges (1) he received ineffective assistance of counsel and (2) the trial court committed reversible error in admitting the victim's hearsay statements.

We affirm.

## I. BACKGROUND

Because Beheler does not challenge the sufficiency of the evidence, only a brief recitation of the facts is necessary.

At 11:30 p.m. on February 27, 1998, Beheler asked Jennifer Ellis, his common-law wife, to leave their home and go buy more beer for him. Ellis returned with the beer in about fifteen minutes. Her oldest child, S.E., got out of bed and followed Ellis into the bathroom. S.E. was whining and Ellis noticed that the front of her panties was stretched out. Ellis asked S.E. if Beheler had been bothering her. S.E. responded affirmatively and said Beheler had put his "ding-ding" in her. When Ellis asked if it had happened before, S.E. answered, "yes, about a million times," and provided additional details. Ellis immediately confronted Beheler, who denied the allegations and asked S.E. if she meant someone else. S.E. told him, "No, it was you." Ellis called the police and Beheler was arrested at their home.

The following day, Ellis took S.E. to Cook's Children's Medical Center for a sexual assault exam. The exam revealed a submucosal hemorrhage to S.E.'s hymen that was inconsistent with accidental trauma and indicative of some type of penetrating injury.

On May 5, 1998, a grand jury returned a two-count indictment charging Beheler with aggravated sexual assault and indecency with a child. The State later waived the second count and proceeded to trial solely on the aggravated sexual assault charge.

## II. INEFFECTIVE ASSISTANCE OF COUNSEL

In point one, Beheler argues his trial counsel rendered ineffective assistance of counsel "as a result of lack of knowledge of the applicable case law." Specifically, he contends that because the

State introduced evidence that Beheler sexually assaulted S.E. on more than one occasion, his trial counsel should have (1) demanded that the State elect which incident it would rely on to support the conviction and (2) requested an oral limiting instruction on the remaining extraneous offenses.[1]

The standard for appellate review of effectiveness of counsel at the guilt-innocence phase of a noncapital trial was set out in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984) and adopted by the Court of Criminal Appeals in *Hernandez v. State,* 726 S.W.2d 53, 57 (Tex.Crim.App.1986). *See Ex parte Menchaca,* 854 S.W.2d 128, 131 (Tex.Crim.App.1993). Appellant's claim that counsel's assistance was so defective as to require reversal of a conviction has two components. First, appellant must show that his counsel's performance was deficient; second, he must show the deficient performance prejudiced the defense. *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064. The first component is met by showing appellant's trial counsel made errors so significant she was not functioning as the "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See id.* The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial whose result is reliable. *See id.*

The question for our review is whether there is a reasonable probability that, absent counsel's errors, the fact-finder would have had a reasonable doubt on the issue of guilt, considering the totality of the evidence. *See id.* at 695, 104 S.Ct. at 2069. Our scrutiny of counsel's performance must be highly deferential, and every effort must be made to eliminate the distorting effects of hindsight. *See id.* at 689, 104 S.Ct. at 2065. Allegations of ineffective assistance of counsel must be firmly

---

1. Because the trial court's charge at guilt-innocence contained a limiting instruction on extraneous offenses, we construe this point only as a challenge to the trial attorney's decision not to request an oral instruction.

founded in the record and the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. *See id.*; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App.1994).

Here, Beheler had the burden to rebut the presumption that his counsel's decisions were not reasonable trial strategy. As the State correctly points out, there is nothing in the record to suggest that they were not. Beheler's trial attorney could have reasonably decided against asking for an election and a limiting instruction to avoid drawing the jury's attention to the extraneous offenses. *See, e.g., Garcia v. State*, 887 S.W.2d 862, 881 (Tex.Crim.App. 1994), *cert. denied*, 514 U.S. 1021, 115 S.Ct. 1368, 131 L.Ed.2d 223 (1995) (holding trial counsel's decision not to request a limiting instruction to avoid reminding jury of incriminating evidence was reasonable trial strategy); *Abbott v. State*, 726 S.W.2d 644, 649 (Tex.App.—Amarillo 1987, pet. ref'd) (holding that trial attorney's failure to request limiting instruction on extraneous offenses could have been a strategic decision not to remind the jury of that evidence). Because the record in this case is devoid of anything that reflects the trial attorney's reasoning, we must defer to the *Strickland* presumption that the defense counsel's decisions on these matters were part of a sound trial strategy. *See Jackson*, 877 S.W.2d at 771–72. Point one is overruled.

## III. HEARSAY

### A. THE VICTIM'S STATEMENTS TO ELLIS

■ In point two, Beheler complains that the trial court erred in allowing Ellis to testify about S.E.'s out-of-court statements because they were inadmissible hearsay. Specifically, he argues that S.E.'s statements to her mother were not admissible under the outcry provision of

the code of criminal procedure and, furthermore, that the trial court failed to follow the statutory prerequisites of this provision to admit outcry testimony.[2] Because Beheler failed to preserve error on this point, however, we do not reach the merits of his complaint.

At trial, the State elicited the following testimony from Ellis:

[STATE]: Did you ask [S.E.] any questions in regards to what was wrong?

[ELLIS]: Yes. I asked her was he bothering you.

[STATE]: When you said he, who did you mean?

[ELLIS]: Michael Beheler.

[STATE]: What did [S.E.] say?

[DEFENSE COUNSEL]: Objection, hearsay. Doesn't comply with 38.072.

THE COURT: Overruled.

[STATE]: You can answer.

[ELLIS]: She said yes, that he had been bothering her and that he put his ding-ding on her.

[STATE]: And did she say just put ding-ding on her or was she more specific about that?

[ELLIS]: I couldn't understand if she said on her, in her, and then she repeated herself and she said in her.

[STATE]: And because she's your daughter, what did she mean by ding-ding? What does—what anatomical part is she referring to when she says ding-ding?

[ELLIS]: Penis.

[STATE]: What did you do when [S.E.] told you this?

[ELLIS]: I couldn't believe it and I asked her if it had happened before and she said yes, about a million times. And then I just asked her more questions and details about what happened.

. . . .

---

2. Although the State timely provided Beheler with notice of its intent to introduce the outcry made to S.E.'s mother, the trial court apparently failed to hold a hearing outside the

jury's presence to evaluate the reliability of S.E.'s statement. *See* TEX.CODE CRIM. PROC. ANN. art. 38.072, § 2(b)(2) (Vernon Supp. 1999).

[STATE]: And did [S.E.] also tell you that the Defendant had threatened her?

[ELLIS]: Yes.

[STATE]: What did [S.E.] tell you?

[ELLIS]: She said that he told her that if she didn't tell me it was a lie, he was going to kill her.

Where an appellant claims the trial judge erred in admitting evidence offered by the State, the error must have been preserved by a proper objection and ruling. *See Ethington v. State*, 819 S.W.2d 854, 858 (Tex.Crim.App.1991); *Rawlings v. State*, 874 S.W.2d 740, 742 (Tex.App.—Fort Worth 1994, no pet.). The objection must have been timely, and the defense must have stated the basis for the objection unless the particular ground was apparent from the context. *See Lankston v. State*, 827 S.W.2d 907, 908–09 (Tex.Crim. App.1992). In addition, Texas law generally requires a party to continue objecting each time inadmissible evidence is offered. *See Ethington*, 819 S.W.2d at 858. Any error in admitting the evidence is cured where the same evidence comes in elsewhere without objection. *See Hudson v. State*, 675 S.W.2d 507, 511 (Tex.Crim.App. 1984); *Mack v. State*, 872 S.W.2d 36, 38 (Tex.App.—Fort Worth 1994, no pet.). The two exceptions to this rule are (1) where the party asks for and receives a running objection and (2) where the party receives a ruling outside the presence of the jury. *See* Tex.R. Evid. 103(a)(1); *Ethington*, 819 S.W.2d at 858; *Rawlings*, 874 S.W.2d at 742.

Here, after Beheler made a timely objection to the State's question in the presence of the jury, he did not continue to object when the same evidence was elicited through additional questioning. Because Beheler did not obtain a running objection or a ruling outside the presence of the jury and did not continue to object each time Ellis related S.E.'s out-of-court statements, Beheler did not preserve anything for our review on this point. *See Ethington*, 819 S.W.2d at 859–60. We overrule point two.

## B. THE VICTIM'S STATEMENTS TO DESMARIS

In his third point, Beheler complains that the trial court erred in admitting the testimony of Araceli Desmaris, a sexual assault nurse examiner at Cook's Children's Medical Center, regarding S.E.'s description of her history of sexual abuse. At trial, Desmaris testified that she interviewed S.E. before conducting a physical exam. During the interview, S.E. stated:

> [E]very time my mom goes to work ..., [Beheler] takes off my clothes. He lays on me and puts his thing inside my private in the hole and it hurts. He pushes ... my head and makes me suck his ding. It makes me want to puke. Some kind of white stuff comes out of his ding on my tummy and it makes me want to puke. Last night when I was asleep, he took off my shorts and my panties and put his ding inside my private. He puts his ding in my butt, but not last night. Sometimes he puts me upside down, like he's going to drop me, and he licks my private and makes me lick his private. That man is sick, so sick I can't stand it. He makes me hold his ding and makes me go up and down and then lick it. He makes me look at dirty magazines. He tells me to say the F word when he is doing stuff to me. He told me I better not tell. Last night, he told me he was going to kill me if I told and I couldn't sleep last night.

Over Beheler's hearsay objection, Desmaris read this statement to the jury.

A careful review of the record reveals that Beheler failed to properly preserve error regarding most of S.E.'s statements to Desmaris. Where substantially the same evidence complained of on appeal is received without objection, any error in admission of the testimony is waived. *See Penry v. State*, 691 S.W.2d 636, 655 (Tex. Crim.App.1985), *cert. denied*, 474 U.S. 1073, 106 S.Ct. 834, 88 L.Ed.2d 805 (1986); *Nathan v. State*, 788 S.W.2d 942, 945 (Tex.

App.—Fort Worth 1990, no pet). At trial, S.E. testified without objection that Beheler:

- put his "private" in her "private;"
- threatened to kill S.E. if she didn't tell her mother that she was lying about the abuse;
- put his tongue in her "private;"
- told her to "say daddy and the F word" while he was sexually assaulting her;
- made her put her hand on his penis; and
- ejaculated on her stomach.

In addition, S.E.'s mother testified without objection that S.E. said Beheler put his penis in her and that it had happened before "about a million times." Because Beheler did not object to the admission of this testimony and it is substantially the same as much of what he now complains about on appeal, he waived error, if any, regarding Desmaris's testimony on these issues. *See Penry*, 691 S.W.2d at 655.

The only matters raised in this point on which Beheler did not waive error are S.E.'s statements to Desmaris that (1) Beheler forced S.E. to lick his penis, (2) he penetrated S.E. anally with his penis, (3) he made S.E. look at "dirty" magazines, and (4) Beheler was "sick" and made S.E. "want to puke." Because hearsay is inadmissible at trial except as provided by statute or by the rules of evidence, we must determine whether these statements fell within one or more of the recognized hearsay exceptions. *See* Tex.R. Evid. 802.

### 1. Statements Made for Medical Diagnosis and Treatment

Rule 803(4) of the rules of evidence provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex.R. Evid. 803(4). This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *See Fleming v. State*, 819 S.W.2d 237, 247 (Tex.App.—Austin 1991, pet. ref'd).

Here, Beheler argues S.E.'s statements were not admissible under this exception because Desmaris "never testified that she examined the complainant for the purpose of medical diagnosis or treatment .... [n]or did Desmaris testify that she elicited the complainant's statements for purposes of treatment." [3] Beheler also argues that the statements were inadmissible under Rule 803(4) because the record does not indicate that S.E. appreciated the need to be truthful in her statements to Desmaris. Finally, he contends that S.E.'s statements "[had] no relevance to diagnosis or treatment or injury suffered by vaginal penetration."

Where very young children are responsible for relating information to their healthcare provider, the presumption of reliability that forms the basis for this exception may break down if they do not understand the importance of being truthful. *See id.* Nevertheless, there is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply. Instead, the reviewing court must look to

---

**3.** Beheler cites to *Floyd v. State*, 959 S.W.2d 706, 712 (Tex.App.—Fort Worth 1998, no pet.) in support of this proposition. In *Floyd*, the doctor testified that the victim's mother told the doctor that the victim had been sexually assaulted by the appellant. Because the doctor testified that the statement was made for purposes of medical diagnosis and treatment, we held that it was admissible under Rule 803(4). *Id.* at 712. However, *Floyd* does not stand for the proposition that a doctor or nurse must always testify that the hearsay statement was made for the purpose of medical diagnosis or treatment before it will be admissible under Rule 803(4).

the record to see if it supports a conclusion that the young child understood why she needed to be honest when speaking to the caregiver. *See Molina v. State,* 971 S.W.2d 676, 684 (Tex.App.—Houston [14th Dist.] 1998, pet. ref'd); *Fleming,* 819 S.W.2d at 247. Likewise, it is unnecessary for the witness to use the magic words "diagnosis" or "treatment." It is sufficient that the evidence reflects that the statements were made for the purpose of medical diagnosis and treatment.

■ Although no specific inquiry was made in this case to determine whether S.E. appreciated the need to be truthful in her statements to Desmaris, the record is sufficient to support this conclusion. Desmaris testified that as a sexual assault nurse examiner, her duties included conducting sexual assault exams on young children. These exams consist of (1) a head-to-toe assessment, (2) a medical history interview, and (3) a genital exam. Desmaris testified that she interviews children individually because they are more comfortable and truthful when talking to the nurse by themselves.

Desmaris said that in this case, she initially met with both S.E. and Ellis to explain what would happen during the sexual assault exam. When Desmaris later interviewed S.E. alone, the child appeared calm and quiet and told Desmaris that she knew why she was there. This evidence is sufficient to support a finding that S.E. understood the need to tell Desmaris the truth.

■ The record likewise supports a conclusion that S.E.'s statements that Beheler "puts his ding in my butt" and "makes me lick his private" were made for the purpose of medical diagnosis and treatment. The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether

further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment. *See Turner v. State,* 924 S.W.2d 180, 182 (Tex.App.—Eastland 1996, pet. ref'd); *Macias v. State,* 776 S.W.2d 255, 259 (Tex.App.—San Antonio 1989, pet. ref'd). Here, Desmaris testified that during a sexual assault exam, if a child indicates she has been abused, Desmaris then asks "more direct questions to make sure we get the full picture and *know how to take care of [her]."* [Emphasis added.] Furthermore, the nurse specifically stated that she interviewed S.E. "for the purpose of" the medical exam. Because S.E.'s out-of-court statements that Beheler forced her to engage in oral and anal intercourse were made for the purpose of medical diagnosis and treatment, they were properly admitted under Rule 803(4).

### 2. Harmless Error Analysis

■ This leaves only S.E.'s statements that Beheler was "so sick" that he made her "want to puke," and that he forced her to look at pornographic magazines. Assuming without deciding that the trial court erred in admitting these statements, Rule 44.2 of the Texas Rules of Appellate Procedure nevertheless mandates that we must disregard the error as long as it is not of constitutional magnitude and did not affect Beheler's substantial rights. TEX.R.APP. P. 44.2;[4] *see Mosley v. State,* 983 S.W.2d 249, 259 (Tex.Crim.App. 1998) (op. on reh'g), *cert. denied,* —— U.S. ——, 119 S.Ct. 1466, 143 L.Ed.2d 550 (1999); *Coggeshall v. State,* 961 S.W.2d 639, 642–43 (Tex.App.—Fort Worth 1998, pet. ref'd) (en banc). An appellant's substantial rights are affected when the error had a substantial and injurious effect or

**4.** (a) Constitutional Error. If the appellate record in a criminal case reveals constitutional error that is subject to harmless error review, the court of appeals must reverse a judgment of conviction or punishment unless the court determines beyond a reasonable

doubt that the error did not contribute to the conviction or punishment.
(b) Other Errors. Any other error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.
TEX.R.APP. P. 44.2.

influence in determining the jury's verdict. *See King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App.1997); *Coggeshall,* 961 S.W.2d at 643.

In this case, Beheler does not complain that the trial court's alleged error is of constitutional dimension, nor do we hold that it is. Both the court of criminal appeals and this court have treated a violation of the evidentiary rules that results in the erroneous admission of evidence as *non-constitutional* error. *See Johnson v. State,* 967 S.W.2d 410, 417 (Tex.Crim.App. 1998) (applying Rule 44.2(b) harm analysis to the erroneous admission of hearsay evidence); *King,* 953 S.W.2d at 271 (same); *Armstead v. State,* 977 S.W.2d 791, 796 (Tex.App.—Fort Worth 1998, pet. ref'd) (noting that "the admission of otherwise inadmissible hearsay is not constitutional error"). We will thus apply a Rule 44.2(b) harm analysis and disregard the error unless it affected Beheler's substantial rights.

After reviewing the record, we hold that the trial court's alleged error in admitting the objectionable statements did not improperly influence the jury's verdict. The jury heard evidence that Beheler vaginally and anally penetrated his seven-year-old victim while instructing her to say, "daddy and the F word." There was also testimony that Beheler performed oral sex on S.E. and forced her to lick his penis. Finally, there was evidence that Beheler ejaculated on S.E.'s stomach numerous times and threatened to kill her if she did not deny the abuse. Compared to all this, the fact that the trial court admitted evidence that Beheler also forced S.E. to look at pornographic magazines and that the child was repulsed by his actions was insignificant. Consequently, this evidence could not have had a substantial influence on the jury's decision. Because the alleged error did not affect Beheler's substantial rights, we must disregard it. *See* Tex.R.App. P. 44.2(b). Point three is overruled.

## IV. CONCLUSION

Having overruled Beheler's points on appeal, we affirm the trial court's judgment.

LEE ANN DAUPHINOT, Justice, concurring.

I concur in the result but write separately because I would hold that the trial court did not err in admitting Desmaris's testimony regarding S.E.'s statements during her interview that (1) "It makes me want to puke"; (2) "it makes me want to puke"; (3) "[Appellant] is sick, so sick I can't stand it"; and (4) "He makes me look at dirty magazines." If the remaining statements from the interview are admissible, and I agree that they are, then these statements are merely same transaction contextual evidence and therefore are admissible. These statements are integral to a full description of the offense.

In *Mayes v. State,* the court of criminal appeals explained same transaction contextual evidence:

> Same transaction contextual evidence is deemed admissible as a so-called exception to the propensity rule where "several crimes are intermixed, or blended with one another, or connected so that they form an indivisible criminal transaction, and full proof by testimony, whether direct or circumstantial, of any one of them cannot be given without showing the others." The reason for its admission "is simply because in narrating the one it is impracticable to avoid describing the other, and not because the other has any evidential purpose." Necessity, then, seems to be one of the reasons behind admitting evidence of the accused's acts, words and conduct at the time of the commission of the offense.[5]

For these reasons only, I write separately.

---

5. *Mayes v. State,* 816 S.W.2d 79, 86 n. 4 (Tex.Crim.App.1991) (citations omitted).