COURT
OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
NO. 2-02-055-CR
 
PATRICIA JO REED                                                                        
    APPELLANT
V.
THE STATE OF TEXAS                                                                         
STATE
------------
FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY
------------
OPINION ON REHEARING
------------
We deny Patricia Jo Reed's motion
for rehearing. However, we withdraw our previous opinion and judgment issued
February 20, 2003, and substitute the following.
I. Introduction
A jury convicted Appellant Patricia
Jo Reed of reckless injury to a child and assessed her punishment at fifteen
years' confinement. In three points on appeal Reed contends that the trial court
erred by admitting a hearsay statement that the child victim made to a therapist
and by excluding a hearsay statement that the child victim made to her father.
We will affirm.
II. Factual
Background
Reed lived in an apartment with Joe
Eckenrod, III and Eckenrod's two-year-old daughter, Samantha. On July 27, 2000,
Reed was at the apartment alone with Samantha. Reed testified that she put
Samantha in the bathtub in a couple of inches of warm water. Samantha was in the
bathtub for about thirty or forty minutes. Reed straightened the apartment,
vacuumed, and paid bills, while periodically checking on Samantha during these
activities. When Reed called to Samantha and she did not answer, Reed rushed
into the bathroom.
The hot water was on slightly, and
Samantha was face down in the tub and not breathing. Reed turned off the water,
lifted Samantha from the tub, and tried to perform CPR. When Samantha did not
respond, Reed picked Samantha up and ran to a neighbor's apartment. The
neighbors called 911 and performed CPR on Samantha. The group moved back to
Reed's apartment and eventually Samantha started breathing again. When Reed
picked Samantha up, she noticed pieces of Samantha's skin sticking to the table
and realized Samantha had been burned.
Samantha suffered a mixture of
first, second, and third degree burns over twenty-six percent of her body and
was treated at Parkland Hospital in the burn unit for approximately one month.
Dr. Hunt, Samantha's treating physician, testified that the burn patterns on
Samantha's body were not consistent with the history of the accident given by
Reed. He said Samantha's burns appeared to be the result of a forced immersion.
Samantha also had some black and blue marks on her head on the side of the
scalp, just above her right ear. On cross-examination, Reed's counsel proposed
that Samantha had fallen and hit her head on the spigot, causing the hot water
to come on slightly, knocking Samantha unconscious, and resulting in Samantha's
burns. Dr. Hunt testified that, if Samantha was knocked unconscious and fell
back into the water, she would have suffered at least some burns on her arms,
when in fact, her arms were not burned at all.
III. Standard of
Review
All three of Reed's points on
appeal complain that the trial court erred by admitting or excluding evidence.
We review the trial court's decision to admit or exclude evidence under an abuse
of discretion standard. Burden v. State, 55 S.W.3d 608, 615 (Tex. Crim.
App. 2001); Green v. State, 934 S.W.2d 92, 101-02 (Tex. Crim. App.
1996), cert. denied, 520 U.S. 1200 (1997); Montgomery v. State,
810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990). The test for abuse of discretion
is not whether, in the opinion of the reviewing court, the facts present an
appropriate case for the trial court's action; rather, it is a question of
whether the court acted without reference to any guiding rules or principles,
and the mere fact that a trial court may decide a matter within its
discretionary authority differently than an appellate court does not demonstrate
such an abuse. Montgomery, 810 S.W.2d at 391. We will not reverse a
trial court's ruling on the admission of evidence as long as the ruling is
within the zone of reasonable disagreement. Id.
IV. Admission of
Samantha's Statement to Therapist
Eckenrod continued to live with
Reed following the accident. Accordingly, Samantha was discharged from the
hospital to the custody of Eckenrod's mother. Samantha then began seeing a
therapist, Laura Gruener. Samantha initially told Gruener that Eckenrod had
burned her, but about one month later said that "Mama Trish" had
burned her because she "pooped her pants." In subsequent therapy
sessions, Samantha never again waivered in her representations to Gruener that
Reed was the person who burned her.
Reed asserted a hearsay objection
to Gruener's testimony about this statement by Samantha.(1)
The State responded that Samantha's statement fell within a hearsay exception
because it was a statement made for the purpose of a medical diagnosis or
treatment. See Tex. R. Evid. 803(4). The trial court overruled Reed's
objection and admitted Samantha's statement as within the diagnosis and
treatment exception to the hearsay rule. Reed complains in her first point that
the trial court erred by admitting Gruener's testimony concerning Samantha's
statement because the State failed to prove that Gruener was qualified as a
medical professional and failed to prove that Samantha knew or was told that her
visits with Gruener were for the purpose of any treatment.
Reed first asserts that the State
failed to adequately establish Gruener was a medical professional authorized to
make medical diagnoses. Consequently, Reed argues that Gruener's testimony was
not admissible under this hearsay exception. Rule 803(4) provides:

        
 (4)Statements for Purposes of Medical Diagnosis or Treatment.
 Statements made for purposes of medical diagnosis or treatment and describing
 medical history, or past or present symptoms, pain, or sensations, or the
 inception or general character of the cause or external source thereof insofar
 as reasonably pertinent to diagnosis or treatment.

Tex. R. Evid. 803(4). This hearsay
exception is premised on the assumption that the patient understands the
importance of being truthful with the medical personnel involved so as to insure
a proper medical diagnosis and treatment. Beheler v. State, 3 S.W.3d
182, 188 (Tex. App.--Fort Worth 1999, pet. ref'd). The two-part test for
admitting hearsay statements under the medical-diagnosis-or-treatment exception
set forth in rule 803(4) is: (1) the declarant must make the statements for the
purpose of receiving medical treatment, and (2) the content of the statement
must be such that it is reasonably relied on by a health care professional in
treatment or diagnosis. See Jones v. State, 92 S.W.3d 619, 622 (Tex.
App.--Austin 2002, no pet. h.).
The medical-diagnosis-or-treatment
hearsay exception typically applies to statements that are made to nurses or
physicians. See Moore v. State, 82 S.W.3d 399, 404 (Tex. App.--Austin
2002, pet. ref'd) (citing cases involving statements to nurses or physicians for
the purpose of medical diagnosis or treatment). However, at least two courts
have applied this hearsay exception to statements made to a social worker and to
a CPS investigator. See Puderbaugh v. State, 31 S.W.3d 683, 685 (Tex.
App.--Beaumont 2000, pet. ref'd); Gohring v. State, 967 S.W.2d 459, 461
(Tex. App.--Beaumont 1998, no pet.). One court refused to apply the exception to
statements made to a therapist, not on the ground that the therapist was not a
medical professional, but on the ground that the statements were simply made
during the course of ongoing therapy and were not for the purpose of securing
treatment or a diagnosis. Jones, 92 S.W.3d at 623-24.
The record before us establishes
that Gruener works as a therapist for Professional Associates Counseling &
Consultation. She has a master's degree in social work and is licensed by the
State of Texas as an advanced clinical practitioner. Before becoming a
therapist, Gruener worked for ten years for Child Protective Services. Gruener
saw Samantha for therapy from September 2000 through October 2001. Gruener
testified that she worked with Samantha to help her through the trauma of being
burned, with safety and trust-type issues, and with self-esteem issues.
The record before us likewise
establishes that Samantha's therapy was medically necessary. Dr. Hunt testified
that psychological treatment for burn patients can be very important. Eckenrod's
mother testified that twice when she drew bathwater for Samantha, once after
Samantha had soiled her pants, the child became terrified, screaming, "[D]on't
burn me, don't burn me." Consequently, in light of Samantha's need for
therapy and Gruener's qualifications, we cannot agree with Reed that Gruener is
not the type of medical professional to which a statement for the purpose of
medical treatment or diagnosis may be made.
Reed next contends that Samantha
did not make the statement to Gruener for the purpose of diagnosis or treatment
and that Samantha was too young to understand the need for truthfulness. In Beheler,
this court held:

        
 Where very young children are responsible for relating information to their
 healthcare provider, the presumption of reliability that forms the basis for
 this exception may break down if they do not understand the importance of
 being truthful. Nevertheless, there is no requirement that a witness expressly
 state that the hearsay declarant recognized the need to be truthful in her
 statements for the medical treatment exception to apply. Instead, the
 reviewing court must look to the record to see if it supports a conclusion
 that the young child understood why she needed to be honest when speaking to
 the caregiver.

3 S.W.3d at 188-89 (citations
omitted). Thus, when the medical-diagnosis-or-treatment hearsay exception
applies to statements by very young children the first prong of the
admissibility test--that the declarant must make the statements for the purpose
of receiving medical treatment--may be satisfied by a showing that the young
child recognized the need to be truthful in her statements to her caregiver. See
id.
We now look to the record to
determine whether it supports the conclusion that Samantha, who was still only
two or three years old, understood she needed to be honest when speaking to
Gruener. The record before us contains no evidence to support the conclusion
that Samantha understood why she was in therapy or that she needed to be
truthful in her statements to Gruener. Neither Samantha's grandmother, her
father, nor Gruener indicated that they had discussed with Samantha the purpose
of her therapy or the need to be truthful. See Powell v. State, 88
S.W.3d 794, 800 (Tex. App.--El Paso 2002 no pet. h.) (holding it was an abuse of
discretion to admit statements three-year-old made to therapist in absence of
indicia of reliability). Moreover, the evidence showed that Samantha initially
told Gruener that her father, who was at work, burned her. Cf. Beheler,
3 S.W.3d at 189 (holding evidence that nurse told child victim and victim's
mother exactly what would happen during sexual assault exam and victim's
subsequent calm demeanor and statements that she knew why she was there
sufficiently supported finding that victim understood the need to tell the
truth). We hold that the trial court abused its discretion and acted outside the
zone of reasonable disagreement by admitting Samantha's hearsay statement to
Gruener as within the medical-diagnosis-or-treatment hearsay exception.
We will not reverse a trial court's
judgment based on the erroneous admission of evidence unless the error affects a
substantial right. Tex. R. App. P. 44.2(b); Johnson v. State, 967
S.W.2d 410, 417 (Tex. Crim. App. 1998). Substantial rights are not affected by
the erroneous admission of evidence "if the appellate court, after
examining the record as a whole, has fair assurance that the error did not
influence the jury, or had but a slight effect." Motilla v. State,
78 S.W.3d 352, 355 (Tex. Crim. App. 2002). In assessing the likelihood that the
jury's decision was adversely affected by the error, we are to consider
everything in the record, including any testimony or physical evidence admitted
for the jury's consideration, the nature of the evidence supporting the verdict,
and the character of the alleged error and how it might be considered in
connection with other evidence in the case. Id. at 356. We may also
consider the jury instructions, the State's theory and any defensive theories,
closing arguments, and even voir dire, if applicable. Id. Whether the
State emphasized the error is a factor we may also consider. Id.
Here, the character of the
error--admission of a statement by a two or three year old, along with a
contrary statement she previously made--when considered in connection with the
other evidence, gives us fair assurance that the error did not influence the
jury, or had but a slight effect. Ample evidence, including Dr. Hunt's testimony
and a large poster charting Samantha's burns, demonstrates that the burns
resulted from a forced immersion. Reed testified that she was the only person at
home with Samantha when the burns occurred. Thus, this is not a situation where
multiple persons were at home and Samantha's statement identified a particular
person as the perpetrator. Rather, here, either Reed forced Samantha into
scalding water, or Samantha's injury was accidental. Given the substantial
evidence that Samantha's burns resulted from a forced immersion as well as the
compelling evidence that the burns did not occur accidentally, such as no burns
on Samantha's arms, we have no doubt that the error in admitting Samantha's
statement to Gruener did not influence the jury, or had but a slight effect. See
Motilla, 78 S.W.3d at 356; cf. Aguilera v. State, 75 S.W.3d
60, 67-68 (Tex. App.--San Antonio 2002, pet. ref'd) (holding erroneous admission
of hearsay statement as excited utterance harmful because case pivoted on
declarant's credibility). We overrule Reed's first point.
V. Exclusion of
Samantha's Statement to Eckenrod
Eckenrod rushed to the Parkland
Hospital emergency room to see Samantha. He saw the bruise on her head and asked
her what had happened. The State asserted a hearsay objection, and Reed argued
that Samantha's statement to her dad fell within the excited utterance hearsay
exception and was offered in rebuttal to Samantha's statement to Gruener. At a
hearing outside the jury's presence, Eckenrod said he did not know at that time
the extent of Samantha's burns. Eckenrod said Samantha started crying and told
him that she had fallen. He asked how she had fallen, and she said she was
trying to get a toy hippo. The trial court sustained the State's hearsay
objection and did not permit the jury to hear Eckenrod's testimony concerning
Samantha's statement to him in the emergency room.
In her second point, Reed claims
that Samantha's statement to Eckenrod was admissible as an excited utterance.
Texas Rule of Evidence 803(2) provides that a hearsay statement may nonetheless
be admissible if it is "[a] statement relating to a startling event or
condition made while the declarant was under the stress of excitement cause by
the event or condition." Tex. R. Evid. 803(2). This exception is founded on
the belief that the statements made are involuntary and do not allow the
declarant an adequate opportunity to fabricate, ensuring their trustworthiness. Moon
v. State, 44 S.W.3d 589, 593 (Tex. App.--Fort Worth 2001, pet. ref'd). To
determine whether a statement qualifies as an excited utterance, (1) the
statement must be the product of a startling occurrence, (2) the declarant must
have been dominated by the emotion, excitement, fear, or pain of the occurrence,
and (3) the statement must be related to the circumstances of the startling
occurrence. Id. at 593-94. Other factors to consider are whether the
statement is spontaneous or in response to questions and how much time has
elapsed between the startling event and the statement. Sellers v. State,
588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.] 1979).
Eckenrod was the first family
member to see Samantha at the hospital. He testified that his next door
neighbors called him and told him there had been an accident and that Samantha
was injured. Eckenrod spoke with a paramedic, who told him Samantha was being
taken by Care Flite to Parkland Hospital in Dallas. Eckenrod was working in
Dallas that day, so he immediately left work and was waiting in Parkland
Hospital's emergency room when Samantha arrived. Eckenrod arrived at the
hospital at about 2:30 p.m., and Reed testified that she put Samantha in the tub
sometime around or before 1:00 p.m.
When Samantha arrived at the
hospital, she was crying and a nurse was holding her with a burn blanket.
Samantha lifted her arms to go to her father, and he walked over to her and
asked her what had happened. Samantha started crying and said that she had
fallen. Eckenrod asked her how she fell, and she said she was trying to get her
hippo.
Samantha's statement appears to be
the product of a startling occurrence, appears to have been made while she was
dominated by the emotion, excitement, fear, or pain of the occurrence, and was
related to the circumstances of the startling occurrence. See Moon, 44
S.W.2d at 593; see also Couchman v. State, 3 S.W.3d 155, 159 (Tex.
App.--Fort Worth 1999, pet. ref'd). Samantha's statement was made in response to
questions from Eckenrod, but was clearly closely related timewise to the
startling event of suffering burns. Thus, although no single rigid principle
governs the admissibility of statements under the excited utterance rule, these
factors in our view generally weigh in favor of the reliability of Samantha's
statement and, thus, in favor of its admissibility. See id. at 159.
Reed also cites Short v. State
for the proposition that the trial court should have admitted Samantha's
statement to her father as within the excited utterance hearsay exception. 658
S.W.2d 250, 254-55 (Tex. App.--Houston [1st Dist.] 1983), aff'd,
671 S.W.2d 888 (Tex. Crim. App. 1984). The facts in Short are similar
to the present facts. In Short, a babysitter noticed that four-year-old
Kenneth appeared to be in pain, had difficulty walking, was feverish, and cried
because he could not use the restroom. Id. at 252. She, and several
family members who were at her home while she babysat Kenneth, observed large
bruises and swelling around Kenneth's penis and in his groin area. Id.
Kenneth told them that his daddy had hit him. Id. Ultimately, Kenneth
was diagnosed with a rectal tear that had abscessed, requiring a colostomy. Id.
at 253. Short, who lived with Kenneth's mother, was convicted of injury to
a child, and on appeal he claimed that the trial court erred by admitting
Kenneth's statements to the babysitter as excited utterance hearsay exceptions. Id.
While we agree with Reed that the
application of the general excited utterance factors and the holding in Short
that Kenneth's statements were admissible as excited utterances tend to support
the admission of Samantha's statement here, we are required to apply an abuse of
discretion standard of review to the trial court's decision to exclude
Samantha's statement. The fact that an appellate court, or even a different
trial court like the Short court, may decide a matter within its
discretionary authority differently does not demonstrate that the ruling court
acted without reference to any guiding rules or principles. See Montgomery,
810 S.W.2d at 391.
Here, Samantha's statement was not
unsolicited, but instead was made in response to Eckenrod's questioning. We are
unable to consider the tone of his questioning, as the trial court did.
Samantha's statement was made in a different location, the hospital emergency
room, away from the physical danger of the bathtub. In addition, it was made
about forty-five minutes to an hour and one-half after Samantha was burned.
Thus, the trial court could have determined that sufficient time and distance
separated Samantha from the startling event so that she had calmed down and was
no longer dominated by the emotions of the event when she made the statement.
Under these circumstances, and the broad discretion granted to the trial court,
we cannot say that the trial court abused its discretion by determining that
Samantha's statement to Eckenrod did not fall within the excited utterance
hearsay exception. We overrule Reed's second point.
Next, in her third point, Reed
complains that the trial court erred by excluding Samantha's statement to
Eckenrod because the statement was admissible under rule 806 to impeach
Gruener's testimony, that is, that Samantha said Mama Trish burned her for
pooping in her pants. Rule 806 provides:

        
 When a hearsay statement . . . has been admitted in evidence, the credibility
 of the declarant may be attacked, and if attacked may be supported by any
 evidence which would be admissible for those purposes if declarant had
 testified as a witness. Evidence of a statement or conduct by the declarant at
 any time, offered to impeach the declarant, is not subject to any requirement
 that the declarant may have been afforded an opportunity to deny or explain.
 If the party against whom a hearsay statement has been admitted calls the
 declarant as a witness, the party is entitled to examine the declarant on the
 statement as if under cross-examination.

Tex. R. Evid. 806. If Samantha had
testified as a witness, her prior statement to her father would have been
admissible for purposes of impeachment. See id.; Tex. R. Evid.
613 (a); see also Marcel v. State, 64 S.W.3d 677, 679 (Tex.
App.--Houston [1st Dist.] 2001, pet. ref'd) (holding, "The State
cannot try a case based largely on T.G.'s hearsay statements, without calling
her as a witness, and then legitimately object when appellant seeks to admit
T.G.'s other inconsistent hearsay statements to impeach her.").
The State agrees that when a
statement has been admitted as an exception to the general prohibition against
hearsay testimony, then the hearsay declarant may be impeached, but contends
that such impeachment may be accomplished only by nonhearsay evidence. Rule 806
provides that evidence of a statement by the declarant at any time, offered
to impeach the declarant, is not subject to any requirement that the
declarant may have been afforded an opportunity to deny or explain. Tex. R. Evid.
806; see also Tex. R. Evid. 613(a). A prior inconsistent statement
offered for the purpose of impeaching the declarant is, by definition, not
hearsay because it is not offered to prove the truth of the matter asserted. See
Tex. R. Evid. 801(d). Samantha's prior statement to Eckenrod concerning how she
was burned was specifically admissible for impeachment purposes under rule 806
after the State admitted Samantha's statement to Gruener that Mama Trish burned
her. Samantha's statement was not offered as hearsay, so we need not address the
State's contention that only nonhearsay evidence may be used for impeachment
purposes under rule 806. Here the evidence used was not offered as hearsay, but
was offered for purposes of impeaching Samantha's already admitted statement to
Gruener. We hold that the trial court abused its discretion by preventing Reed
from impeaching Samantha's credibility as authorized by rule 806 with evidence
of her prior inconsistent statement to Eckenrod after it admitted her hearsay
statement to Gruener.
We must now determine whether the
exclusion of this statement by Samantha affected Reed's substantial rights.(2)
See Tex. R. App. P. 44.2(b); Johnson, 967 S.W.2d at 417.
Substantial rights are not affected by the erroneous exclusion of evidence if,
after examining the record as a whole, we have fair assurance that the error did
not influence the jury, or had but a slight effect. Motilla, 78 S.W.3d
at 356. As we outlined in our harm analysis concerning Reed's first point, the
undisputed fact that Reed was the only person home with Samantha when she was
burned, the physical evidence of forced immersion, Dr. Hunt's testimony
concerning forced immersion, the lack of physical evidence consistent with
accidental burns, Dr. Hunt's testimony that the burns were inconsistent with an
accidental immersion, and Eckenrod's mother's testimony that Samantha became
hysterical and screamed, "[D]on't burn me, don't burn me" when she ran
bathwater, all compel the conclusion that the error in excluding young
Samantha's statement to her father that she had fallen reaching for her hippo
had little or no effect on the jury. The story told by the physical evidence in
this case is simply so strong that we cannot conclude the jury would have been
influenced by Eckenrod's testimony concerning the statement Samantha made in the
emergency room. Because the exclusion of Samantha's statement to Eckenrod did
not affect Reed's substantial rights, we overrule her third point.
VI. Conclusion
Having overruled each of Reed's
points, we affirm the trial court's judgment.
 
                                                                        
SUE WALKER
                                                                        
JUSTICE
 
PANEL B: CAYCE, C.J.; HOLMAN and
WALKER, JJ.
               
CAYCE, C.J. concurs without opinion.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: April 17, 2003

1. Neither the State nor Reed called Samantha as a
witness.
2. We note that the erroneous exclusion of a defendant's
evidence rises to the level of constitutional error triggering a rule 44.2(a)
harm analysis only if the evidence forms such a vital portion of the case that
the exclusion effectively precludes the defendant from presenting a defense. Potier
v. State, 68 S.W.3d 657, 665 (Tex. Crim App. 2002); see Fox v. State,
No. 14-00-01367-CR, slip op. at 7-8 , 2002 WL 122056, at *5 (Tex. App.--Houston
[14th Dist.] Jan. 31, 2002, pet. ref'd) (error in excluding
defendant's evidence required reversal). Reed does not claim constitutional
error here.