Patricia Jo Reed v. State

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-055-CR

PATRICIA JO REED APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

OPINION

------------

I.  Introduction

A jury convicted Appellant Patricia Jo Reed of reckless injury to a child and assessed her punishment at fifteen years’ confinement.  In three points on appeal Reed contends that the trial court erred by admitting a hearsay statement that the child victim made to a therapist and by excluding a hearsay statement that the child victim made to her father.  We will affirm.

II.  Factual Background

Reed lived in an apartment with Joe Eckenrod, III and Eckenrod’s two-year-old daughter, Samantha.  On July 27, 2000, Reed was at the apartment alone with Samantha.  Reed testified that she put Samantha in the bathtub in a couple of inches of warm water.  Samantha was in the bathtub for about thirty or forty minutes.  Reed straightened the apartment, vacuumed, and paid bills, while periodically checking on Samantha during these activities.  When Reed called to Samantha and she did not answer, Reed rushed into the bathroom.

The hot water was on slightly, and Samantha was face down in the tub and not breathing.  Reed turned off the water, lifted Samantha from the tub, and tried to perform CPR.  When Samantha did not respond, Reed picked Samantha up and ran to a neighbor’s apartment.  The neighbors called 911 and performed CPR on Samantha.  The group moved back to Reed’s apartment and eventually Samantha started breathing again.  When Reed picked Samantha up, she noticed pieces of Samantha’s skin sticking to the table and realized Samantha had been burned.

Samantha suffered a mixture of first, second, and third degree burns over twenty-six percent of her body and was treated at Parkland Hospital in the burn unit for approximately one month.  Dr. Hunt, Samantha’s treating physician, testified that the burn patterns on Samantha’s body were not consistent with the history of the accident given by Reed.  He said Samantha’s burns appeared to be the result of a forced immersion.  Samantha also had some black and blue marks on her head on the side of the scalp, just above her right ear.  On cross-examination, Reed’s counsel proposed that Samantha had fallen and hit her head on the spigot, causing the hot water to come on slightly, knocking Samantha unconscious, and resulting in Samantha’s burns.  Dr. Hunt testified that, if Samantha was knocked unconscious and fell back into the water, she would have suffered at least some burns on her arms, when in fact, her arms were not burned at all.

III.  Standard of Review

All three of Reed’s points on appeal complain that the trial court erred by admitting or excluding evidence.  We review the trial court’s decision to admit or exclude evidence under an abuse of discretion standard.  
Burden v. State, 
55 S.W.3d 608, 615 (Tex. Crim. App. 2001); 
Green v. State
, 934 S.W.2d 92, 101-02 (Tex. Crim. App. 1996), 
cert. denied
, 520 U.S. 1200 (1997); 
Montgomery v. State
, 810 S.W.2d 372, 379-80 (Tex. Crim. App. 1990).  The test for abuse of discretion is not whether, in the opinion of the reviewing court, the facts present an appropriate case for the trial court's action; rather, it is a question of whether the court acted without reference to any guiding rules or principles, and the mere fact that a trial court may decide a matter within its discretionary authority differently than an appellate court does not demonstrate such an abuse.  
Montgomery
, 810 S.W.2d at 391.  We will not reverse a trial court’s ruling on the admission of evidence as long as the ruling is within the zone of reasonable disagreement.  
Id.

IV.  Admission of Samantha’s Statement to Therapist

Eckenrod continued to live with Reed following the accident.  Accordingly, Samantha was discharged from the hospital to the custody of Eckenrod’s mother.  Samantha then began seeing a therapist, Laura Gruener. Samantha initially told Gruener that Eckenrod had burned her, but about one month later said that “Mama Trish” had burned her because she “pooped her pants.”  In subsequent therapy sessions, Samantha never again waivered in her representations to Gruener that Reed was the person who burned her.

Reed asserted a hearsay objection to Gruener’s testimony about this statement by Samantha.
(footnote: 1)  The State responded that Samantha’s statement fell within a hearsay exception because it was a statement made for the purpose of a medical diagnosis or treatment.  
See
 
Tex. R. Evid.
 803(4).  The trial court overruled Reed’s objection and admitted Samantha’s statement as within the diagnosis and treatment exception to the hearsay rule.  Reed complains in her first point that the trial court erred by admitting Gruener’s testimony concerning Samantha’s statement because the State failed to prove that Gruener was qualified as a medical professional and failed to prove that Samantha knew or was told that her visits with Gruener were for the purpose of any treatment. 

Reed first asserts that the State failed to adequately establish Gruener was a medical professional authorized to make medical diagnoses. Consequently, Reed argues that Gruener’s testimony was not admissible under this hearsay exception.  Rule 803(4) provides:

(4)Statements for Purposes of Medical Diagnosis or Treatment.
 Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

Tex. R. Evid.
 803(4).  This hearsay exception is premised on the assumption that the patient understands the importance of being truthful with the medical personnel involved so as to insure a proper medical diagnosis and treatment. 
Beheler v. State,
 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref’d). The two-part test for admitting hearsay statements under the medical-diagnosis-or-treatment exception set forth in rule 803(4) is: (1) the declarant must make the statements for the purpose of receiving medical treatment, and (2) the content of the statement must be such that it is reasonably relied on by a health care professional in treatment or diagnosis.  
See Jones v. State
, 92 S.W.3d 619, 622 (Tex. App.—Austin 2002, no pet. h.).

The medical-diagnosis-or-treatment hearsay exception typically applies to statements that are made to nurses or physicians.  
See Moore v. State
, 82 S.W.3d 399, 404 (Tex. App.—Austin 2002, pet. ref’d) (citing cases involving statements to nurses or physicians for the purpose of medical diagnosis or treatment).  However, at least two courts have applied this hearsay exception to statements made to a social worker and to a CPS investigator.  
See Puderbaugh v. State
, 31 S.W.3d 683, 685 (Tex. App.—Beaumont 2000, pet. ref’d); 
Gohring v. State
, 967 S.W.2d 459, 461 (Tex. App.—Beaumont 1998, no pet.).  One court refused to apply the exception to statements made to a therapist, not on the ground that the therapist was not a medical professional, but on the ground that the statements were simply made during the course of ongoing therapy and were not for the purpose of securing treatment or a diagnosis.  
Jones
, 92 S.W.3d at 623-24.

The record before us establishes that Gruener works as a therapist for Professional Associates Counseling & Consultation.  She has a master’s degree in social work and is licensed by the State of Texas as an advanced clinical practitioner.  Before becoming a therapist, Gruener worked for ten years for Child Protective Services.  Gruener saw Samantha for therapy from September 2000 through October 2001.  Gruener testified that she worked with Samantha to help her through the trauma of being burned, with safety and trust-type issues, and with self-esteem issues.

The record before us likewise establishes that Samantha’s therapy was medically necessary.  Dr. Hunt testified that psychological treatment for burn patients can be very important.  Eckenrod’s mother testified that twice when she drew bathwater for Samantha, once after Samantha had soiled her pants, the child became terrified, screaming, “[D]on’t burn me, don’t burn me.” Consequently, in light of Samantha’s need for therapy and Gruener’s qualifications, we cannot agree with Reed that Gruener is not the type of medical professional to which a statement for the purpose of medical treatment or diagnosis may be made.

Reed next contends that Samantha did not make the statement to Gruener for the purpose of diagnosis or treatment and that Samantha was too young to understand the need for truthfulness.  In 
Beheler
, this court held:

Where very young children are responsible for relating information to their healthcare provider, the presumption of reliability that forms the basis for this exception may break down if they do not understand the importance of being truthful.  Nevertheless, there is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply.  Instead, the reviewing court must look to the record to see if it supports a conclusion that the young child understood why she needed to be honest when speaking to the caregiver.

3 S.W.3d at 188-89 (citations omitted).  Thus, when the medical-diagnosis-or-treatment hearsay exception applies to statements by very young children the first prong of the admissibility test—that the declarant must make the statements for the purpose of receiving medical treatment—may be satisfied by a showing that the young child recognized the need to be truthful in her statements to her caregiver.  
See id.

We now look to the record to determine whether it supports the conclusion that Samantha, who was still only two or three years old, understood she needed to be honest when speaking to Gruener.  The record before us contains no evidence to support the conclusion that Samantha understood why she was in therapy or that she needed to be truthful in her statements to Gruener.  
Neither Samantha’s grandmother, her father, nor Gruener indicated that they had discussed with Samantha the purpose of her therapy or the need to be truthful.  
See Powell v. State
, 88 S.W.3d 794, 800 (Tex. App.—El Paso 2002 no pet. h.) (holding it was an abuse of discretion to admit statements three-year-old made to therapist in absence of indicia of reliability).  Moreover, the evidence showed that Samantha initially told Gruener that her father, who was at work, burned her.  
Cf. Beheler
, 3 S.W.3d at 189 (holding evidence that nurse told child victim and victim’s mother exactly what would happen during sexual assault exam and victim’s subsequent calm demeanor and statements that she knew why she was there sufficiently supported finding that victim understood the need to tell the truth).  We hold that the trial court abused its discretion and acted outside the zone of reasonable disagreement by admitting Samantha’s hearsay statement to Gruener as within the medical-diagnosis-or-treatment hearsay exception.

We will not reverse a trial court’s judgment based on the erroneous admission of evidence unless the error affects a substantial right.  
Tex. R. App. P.
 44.2(b); 
Johnson v. State
, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). Substantial rights are not affected by the erroneous admission of evidence "if the appellate court, after examining the record as a whole, has fair assurance that the error did not influence the jury, or had but a slight effect."  
Motilla v. State
, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).  In assessing the likelihood that the jury's decision was adversely affected by the error, we are to consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, and the character of the alleged error and how it might be considered in connection with other evidence in the case.  
Id
. at 356.  We may also consider the jury instructions, the State's theory and any defensive theories, closing arguments, and even voir dire, if applicable.  
Id.
  Whether the State emphasized the error is a factor we may also consider.  
Id.

Here, the character of the error—admission of a statement by a two or three year old, along with a contrary statement she previously made—when considered in connection with the other evidence, gives us fair assurance that the error did not influence the jury, or had but a slight effect.  Ample evidence, including Dr. Hunt’s testimony and a large poster charting Samantha’s burns, demonstrates that the burns resulted from a forced immersion.  Reed testified that she was the only person at home with Samantha when the burns occurred. Thus, this is not a situation where multiple persons were at home and Samantha’s statement identified a particular person as the perpetrator.  Rather, here, either Reed forced Samantha into scalding water, or Samantha’s injury was accidental.  Given the substantial evidence that Samantha’s burns resulted from a forced immersion as well as the compelling evidence that the burns did not occur accidentally, such as no burns on Samantha’s arms, we have no doubt that the error in admitting Samantha’s statement to Gruener did not influence the jury, or had but a slight effect.  
See
 
Motilla, 
78 S.W.3d at 356; 
cf. Aguilera v. State
, 75 S.W.3d 60, 67-68 (Tex. App.—San Antonio 2002, pet. ref’d) (holding erroneous admission of hearsay statement as excited utterance harmful because case pivoted on declarant’s credibility).  
We overrule Reed’s first point.

V.  Exclusion of Samantha’s Statement to Eckenrod

Eckenrod rushed to the Parkland Hospital emergency room to see Samantha.  He saw the bruise on her head and asked her what had happened. The State asserted a hearsay objection, and Reed argued that Samantha’s statement to her dad fell within the excited utterance hearsay exception and was offered in rebuttal to Samantha’s statement to Gruener.  At a hearing outside the jury’s presence, Eckenrod said he did not know at that time the extent of Samantha’s burns.  Eckenrod said Samantha started crying and told him that she had fallen.  He asked how she had fallen, and she said she was trying to get a toy hippo.  The trial court sustained the State’s hearsay objection and did not permit the jury to hear Eckenrod’s testimony concerning Samantha’s statement to him in the emergency room. 

In her second point, Reed claims that Samantha’s statement to Eckenrod was admissible as an excited utterance.  Texas Rule of Evidence 803(2) provides that a hearsay statement may nonetheless be admissible if it is “[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.” 
Tex. R. Evid.
 803(2).  This exception is founded on the belief that the statements made are involuntary and do not allow the declarant an adequate opportunity to fabricate, ensuring their trustworthiness.  
Moon v. State
, 44 S.W.3d 589, 593 (Tex. App.—Fort Worth 2001, pet. ref’d).  To determine whether a statement qualifies as an excited utterance, (1) the statement must be the product of a startling occurrence, (2) the declarant must have been dominated by the emotion, excitement, fear, or pain of the occurrence, and (3) the statement must be related to the circumstances of the startling occurrence.
 Id
. at 593-94.  Other factors to consider are whether the statement is spontaneous or in response to questions and how much time has elapsed between the startling event and the statement.  
Sellers v. State
, 588 S.W.2d 915, 918 (Tex. Crim. App. [Panel Op.] 1979).

Eckenrod was the first family member to see Samantha at the hospital. He testified that his next door neighbors called him and told him there had been an accident and that Samantha was injured.  Eckenrod spoke with a paramedic, who told him Samantha was being taken by Care Flite to Parkland Hospital in Dallas.  Eckenrod was working in Dallas that day, so he immediately left work and was waiting in Parkland Hospital’s emergency room when Samantha arrived.  Eckenrod arrived at the hospital at about 2:30 p.m., and Reed testified that she put Samantha in the tub sometime around or before 1:00 p.m. 

When Samantha arrived at the hospital, she was crying and a nurse was holding her with a burn blanket.  Samantha lifted her arms to go to her father, and he walked over to her and asked her what had happened.  Samantha started crying and said that she had fallen.  Eckenrod asked her how she fell, and she said she was trying to get her hippo.

Samantha’s statement appears to be the product of a startling occurrence, appears to have been made while she was dominated by the emotion, excitement, fear, or pain of the occurrence, and was related to the circumstances of the startling occurrence. 
 See Moon
, 44 S.W.2d at 593
; 
see also Couchman v. State
, 3 S.W.3d 155, 159 (Tex. App.—Fort Worth 1999, pet. ref’d). Samantha’s statement was made in response to questions from Eckenrod, but was clearly closely related timewise to the startling event of suffering burns.  Thus, although no single rigid principle governs the admissibility of statements under the excited utterance rule, these factors in our view generally weigh in favor of the reliability of Samantha’s statement and, thus, in favor of its admissibility.  
See id.
 at 159.   

Reed also cites 
Short v. State
 for the proposition that the trial court should have admitted Samantha’s statement to her father as within the excited utterance hearsay exception.  658 S.W.2d 250, 254-55 (Tex. App.—Houston [1
st
 Dist.] 1983), 
aff’d
, 671 S.W.2d 888 (Tex. Crim. App. 1984).  The facts in
 Short
 are similar to the present facts.  In 
Short
, a babysitter noticed that four-year-old Kenneth appeared to be in pain, had difficulty walking, was feverish, and cried because he could not use the restroom.  
Id.
 at 252.  She, and several family members who were at her home while she babysat Kenneth, observed large bruises and swelling around Kenneth’s penis and in his groin area.  
Id.
  Kenneth told them that his daddy had hit him. 
 Id.
  Ultimately, Kenneth was diagnosed with a rectal tear that had abscessed, requiring a colostomy.  
Id. 
at 253.  Short, who lived with Kenneth’s mother, was convicted of injury to a child, and on appeal he claimed that the trial court erred by admitting Kenneth’s statements to the babysitter as excited utterance hearsay exceptions.  
Id.

While we agree with Reed that the application of the general excited utterance factors and the holding in 
Short
 that Kenneth’s statements were admissible as excited utterances tend to support the admission of Samantha’s statement here, we are required to apply an abuse of discretion standard of review to the trial court’s decision to exclude Samantha’s statement.  The fact that an appellate court, or even a different trial court like the 
Short
 court, may decide a matter within its discretionary authority differently does not demonstrate that the ruling court acted without reference to any guiding rules or principles.  
See Montgomery
, 810 S.W.2d at 391.

Here, Samantha’s statement was not unsolicited, but instead was made in response to Eckenrod’s questioning.  We are unable to consider the tone of his questioning, as the trial court did.  Samantha’s statement was made in a different location, the hospital emergency room, away from the physical danger of the bathtub.  In addition, it was made about forty-five minutes to an hour and one-half after Samantha was burned.  Thus, the trial court could have determined that sufficient time and distance separated Samantha from the startling event so that she had calmed down and was no longer dominated by the emotions of the event when she made the statement.  Under these circumstances, and the broad discretion granted to the trial court, we cannot say that the trial court abused its discretion by determining that Samantha’s statement to Eckenrod did not fall within the excited utterance hearsay exception.  We overrule Reed’s second point.

Next, in her third point, Reed complains that the trial court erred by excluding Samantha’s statement to Eckenrod because the statement was admissible under rule 806 to impeach Gruener’s testimony, that is, that Samantha said Mama Trish burned her for pooping in her pants.  Rule 806 provides:

When a hearsay statement . . . has been admitted in evidence, the credibility of the declarant may be attacked, and if attacked may be supported by any evidence which would be admissible for those purposes if declarant had testified as a witness.  Evidence of a statement or conduct by the declarant at any time, offered to impeach the declarant, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.  If the party against whom a hearsay statement has been admitted calls the declarant as a witness, the party is entitled to examine the declarant on the statement as if under cross-examination.

Tex. R. Evid.
 806.  
If Samantha had testified as a witness, her prior statement to her father would have been admissible for purposes of impeachment.  
See
 
id
.
; 
Tex. R. Evid.
 613 (a);
 see also
 
Marcel v. State
, 64 S.W.3d 677, 679 (Tex. App.—Houston [1
st
 Dist.] 2001, pet. ref’d) (holding, “The State cannot try a case based largely on T.G.'s hearsay statements, without calling her as a witness, and then legitimately object when appellant seeks to admit T.G.'s other inconsistent hearsay statements to impeach her.”).

The State agrees that when a statement has been admitted as an exception to the general prohibition against hearsay testimony, then the hearsay declarant may be impeached, but contends that such impeachment may be accomplished only by nonhearsay evidence.  Rule 806 provides that evidence of a statement by the declarant at any time, 
offered to impeach the declarant
, is not subject to any requirement that the declarant may have been afforded an opportunity to deny or explain.  
Tex. R. Evid.
 806; 
see also
 
Tex. R. Evid.
 613(a).  A prior inconsistent statement offered for the purpose of impeaching the declarant is, by definition, not hearsay because it is not offered to prove the truth of the matter asserted.  
See
 
Tex. R. Evid.
 801(d). Samantha’s prior statement to Eckenrod concerning how she was burned was specifically admissible for impeachment purposes under rule 806 after the State admitted Samantha’s statement to Gruener that Mama Trish burned her. Samantha’s statement was not offered as hearsay, so we need not address the State’s contention that only nonhearsay evidence may be used for impeachment purposes under rule 806.  Here the evidence used was not offered as hearsay, but was offered for purposes of impeaching Samantha’s already admitted statement to Gruener.  We hold that the trial court abused its discretion by preventing Reed from impeaching Samantha’s credibility as authorized by rule 806 with evidence of her prior inconsistent statement to Eckenrod after it admitted her hearsay statement to Gruener.

We must now determine whether the exclusion of this statement by Samantha affected Reed’s substantial rights.
(footnote: 2)  
See
 
Tex. R. App. P. 
44.2(b); 
Johnson, 
967 S.W.2d at 417.  Substantial rights are not affected by the erroneous exclusion of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. 
Motilla
, 78 S.W.3d at 356.  As we outlined in our harm analysis concerning Reed’s first point, the undisputed fact that Reed was the only person home with Samantha when she was burned, the physical evidence of forced immersion, Dr. Hunt’s testimony concerning forced immersion, the lack of physical evidence consistent with accidental burns, Dr. Hunt’s testimony that the burns were inconsistent with an accidental immersion, and Eckenrod’s mother’s testimony that Samantha became hysterical and screamed, “[D]on’t burn me, don’t burn me” when she ran bathwater, all compel the conclusion that the error in excluding young Samantha’s statement to her father that she had fallen reaching for her hippo had little or no effect on the jury.  The story told by the physical evidence in this case is simply so strong that we cannot conclude the jury would have been influenced by Eckenrod’s testimony concerning the statement Samantha made in the emergency room.  Because the exclusion of Samantha’s statement to Eckenrod did not affect Reed’s substantial rights, we overrule her third point.

VI.  Conclusion

Having overruled each of Reed’s points, we affirm the trial court’s judgment.

SUE WALKER

JUSTICE

PANEL B: CAYCE, C.J.; HOLMAN and WALKER, JJ.

CAYCE, C.J. concurs without opinion.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

[Delivered February 20, 2003]

FOOTNOTES
1:
Neither the State nor Reed called Samantha as a witness.

2:
We note that the erroneous exclusion of a defendant’s evidence rises to the level of constitutional error triggering a rule 44.2(a) harm analysis only if the evidence forms such a vital portion of the case that the exclusion effectively precludes the defendant from presenting a defense.  
Potier v. State
, 68 S.W.3d 657, 665 (Tex. Crim App. 2002); 
see Fox v. State
, No. 14-00-01367-CR, slip op. at 7-8 , 2002 WL 122056, at *5 (Tex. App.—Houston [14
th
 
Dist.] Jan. 31, 2002, pet. ref’d) (error in excluding defendant’s evidence required reversal).  Reed does not claim constitutional error here.