COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | § | |
|---|---|---|
| JEREMY JEROME JOHNSON, | | No. 08-06-00151-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 380th District Court |
| | § | |
| THE STATE OF TEXAS, | | of Collin County, Texas |
| | § | |
| Appellee. | | (TC # 380-82205-05) |
| | § | |

## **O P I N I O N**

Jeremy Jerome Johnson appeals his conviction of aggravated sexual assault of a child. The jury assessed punishment at twenty-years' confinement. For the following reasons, we affirm.

### **FACTUAL SUMMARY**

The complainant is nine-year-old A.J., Appellant's niece. At the time in question, Appellant lived with his sister, Christy, and her nine-year old son, Calvarius. Jobethany Johnson was formerly married to Christy and Appellant's younger brother. Jobethany has three children, A.J., Tyreek, and Alyssia.

In February 2005, Christy and Jobethany left their children in Appellant's care while the two women went out for the evening. Appellant, Calvarius, and A.J. were watching a movie while A.J.'s siblings slept in Calvarius' bedroom. A.J. was sitting on Appellant's lap and Calvarius was sitting next to them. At one point, Calvarius got up from the couch and moved in front of the television.

According to A.J., Appellant reached over her body and slipped his hand into her underwear. His breath smelled like "the stinky smell after you have a couple of beers." A.J. tried to get up but

was unable to do so because Appellant held her back with his other arm. She described Appellant's hand as being "sideways." A.J. stomped on Appellant's foot and was then able to get away. Once he removed his hand from A.J.'s underwear, Appellant lifted his fingers to his nose and smelled them. During this time, Calvarius had his back to A.J. and Appellant.

A.J. waited a few months before telling her cousin, Stephanie, about the incident. Stephanie testified that A.J. told her in June that Uncle Jerald was messing with her. A.J. explained that the incident occurred in February while everyone was asleep. "It was late at night, and she said it was just him and her that was up, and she said that she sat in his lap and he had rubbed her in between her legs." A.J. then told her mother, who notified the police. A.J. was taken to the Collin County Children's Advocacy Center where she was interviewed by a forensic interviewer and evaluated by a Sexual Assault Nurse Examiner (SANE). A videotape of the forensic interview was admitted into evidence in which A.J. stated her uncle stuck his hand into her private. She felt some rubbing and thought he was rubbing somewhere on top of or inside her private.

Appellant brings four issues for review. The first three address evidentiary issues while the latter complains that the trial court erred by not requiring the State to elect between offenses.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant argues the evidence is both legally and factually insufficient to support his conviction. Our resolution of this issue requires that we answer one question. Was there penetration?

### Standards of Review

In reviewing the legal sufficiency of the evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether a rational juror could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99

S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979); *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007). We must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13, *citing Jackson*, 443 U.S. at 318-19, 99 S.Ct. 2181.

In reviewing the factual sufficiency of the evidence, we view all the evidence in a neutral light, favoring neither party. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.Crim.App. 2000); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex.Crim.App. 1996). In performing our review, we are to give due deference to the fact finder's determinations. *See id.* at 8-9; *Clewis*, 922 S.W.2d at 136. The fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony." *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991). Evidence is factually insufficient if it is so weak that it would be clearly wrong and manifestly unjust to allow the verdict to stand, or the finding of guilt is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. Thus, the question we must consider in conducting a factual sufficiency review is whether a neutral review of all the evidence, both for and against the finding, demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the fact finder's determination, or the proof of guilt, although adequate if taken alone, is greatly outweighed by contrary proof. *Id.*

Under the first prong, we cannot conclude that a conviction is "clearly wrong" or "manifestly unjust" simply because, on the quantum of evidence admitted, we would have voted to acquit had we been on the jury. *Watson v. State*, 204 S.W.3d 404, 417 (Tex.Crim.App. 2006). Under the second prong, we cannot declare that a conflict in the evidence justifies a new trial simply because we disagree with the jury's resolution of that conflict. *Id.* Before finding that evidence is factually insufficient to support a verdict, we must be able to say, with some objective basis in the record, that

the great weight and preponderance of the evidence contradicts the jury's verdict. *Id.*

*Aggravated Sexual Assault of a Child*

A person commits the offense of aggravated sexual assault of a child if he intentionally or knowingly causes the penetration of the anus or sexual organ of a child by any means. TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(i)(Vernon Supp. 2007). Appellant contends the evidence is legally insufficient because there was no evidence that he penetrated the female sexual organ with his finger. But A.J. testified that her uncle had stuck his hand into her private. She also testified she felt some rubbing and thought the rubbing was somewhere on top or inside. While Appellant discounts her testimony that the rubbing was "inside," we must consider it for purposes of a legal sufficiency review. Thus, viewing the evidence in the light most favorable to the verdict, the evidence is legally sufficient. Hooper, 214 S.W.3d at 13 (we must give deference to "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts").

Next, Appellant complains the evidence is factually insufficient because the contrary evidence greatly outweighed any evidence of his guilt. He bases this argument on (1) the SANE nurse's purported admission that A.J. never stated, "he put his fingers inside me"; (2) the forensic examiner's testimony that A.J. told her Appellant had touched her on the outside; and (3) when prosecutors asked A.J. if Appellant's hand stayed still or moved around she said, "No, it was sideways."

Case law has established that the slightest penetration of the female sexual organ is sufficient to prove penetration even though the vagina is not entered. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App. 1992); *Sherbert v. State*, 531 S.W.2d 636, 637 (Tex.Crim.App. 1976); *Nilsson v. State*, 477 S.W.2d 592, 595 (Tex.Crim.App. 1972); *Lopez v. State*, 2006 WL 736976 at *4-5

(Tex.App.--El Paso 2006, pet. ref'd).  Penetration occurs where the contact is more intrusive than contact with the outer labia.  *See Vernon*, 841 S.W.2d at 409; *Lopez*, 2006 WL 736976 at \*4.  Pushing aside and reaching beneath a natural fold of skin into an area of the body not usually exposed to view, even in nakedness, is a significant intrusion beyond mere external contact, and is sufficient to prove penetration.  *Id.*

A.J. told the SANE nurse, Carol Goldberg, that her uncle reached into her underwear, started rubbing against her private, and it did not feel very good.  Based on her training and experience, Goldberg opined that if human fingers are placed on the outer lips of the vagina and are rubbing side to side, there is a possibility they will separate the lips and cause penetration.  She also admitted that merely putting fingers on the female sexual organ may not cause penetration.  We might find Appellant's argument more persuasive if the record were limited to this testimony. A.J. informed the forensic examiner that her uncle had stuck his hand inside her private.  It is, of course, unlikely that he inserted his entire hand.  But it was reasonable for a jury to conclude that Appellant slipped his hand into A.J.'s underwear and turned it "sideways."  When he removed it, he raised two fingers to his nose and smelled them.  Reviewing all of this evidence in a neutral light, we must conclude it is factually sufficient to support the conviction.  *See Chambers v. State*, 805 S.W.2d 459, 461 (Tex.Crim.App. 1991)(the fact finder is the judge of the credibility of the witnesses and may "believe all, some, or none of the testimony").  We overrule Issue One.

## EVIDENTIARY ISSUES

### *Standard of Review*

We review a trial court's decision regarding the admissibility of evidence for an abuse of discretion.  *Rodriguez v. State*, 203 S.W.3d 837, 841 (Tex.Crim.App. 2006).  Under this standard, we are required to uphold the trial court's decision when it falls within the zone of reasonable

disagreement, and we may not reverse solely because we disagree with it. *See id.*

*Extraneous Offense*

In his second issue, Appellant claims the trial court erred in admitting evidence of an extraneous offense. Rule of Evidence 404(b) states:

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction.

TEX.R.EVID. 404(b). At issue is the testimony of Katrina Wright and her children Jamica Wright and Jason Collins. The family lived next door to Appellant, Christy, and Calvarius. Jamica and Calvarius were friends and Jamica sometimes stayed overnight at Appellant's home. While she was sleeping, Appellant would awaken her and touch her with his hand. Jason testified that one night, his mother told him to check on Jamica while she was at Appellant's home. Jason went next door. As he entered Calvarius' bedroom, he saw his sister sleeping on the top bunk while Appellant stood beside her. He heard Jamica groan a couple of times and saw Appellant's hand in her underwear. Appellant told him to go back home and not speak of it.

At the guilt/innocence phase of trial, Appellant testified :

Q: Now Jeremy, you and I have talked about whether you would testify in this case or not, correct?

A: Yes.

Q: And me trying to be a good lawyer, I told you there's a lot of risk and dangers associated with it, right?

A: Yes.

Q: And I told you that you could get up here and talk, but then the prosecution gets to ask you a bunch of questions you probably won't like, right?

A: Yes.

Q: And despite all that, you wanted to get up here and testify, correct?

A: Yes.

Q: Why did you want to testify so badly? What did you want to tell this jury? Look at them and tell them.

A: I have nothing to hide. I shouldn't fear no man but God. I mean, I'm nervous as I don't know what, but I've got to get up here and speak for myself because if I don't, who's going to speak for me.

I could have a thousand witnesses get up here and say how good of a guy I am, and it's not going to make a difference if I don't get up here and speak for myself.

The State argued outside the presence of the jury that Appellant had opened the door to questioning about other incidents of molestation. The prosecutor sought to cross-examine Appellant about his familiarity with the witnesses and then--depending upon his responses--they would then be called as rebuttal witnesses.[1] All told, the State offered three reasons why the testimony was admissible: (1) to correct the false impression about the extent of Appellant's prior trouble with the police,[2] (2) to rebut Appellant's defensive theory that A.J. lied about the assault to please her mother,[3] and (3) to establish that the incident was intentional and not an accident or a mistake. However, the jury was charged only as to the third ground:

---

[1] The State argued at trial, "It's being offered for rebuttal purposes because this Defendant has placed his character in controversy by taking the stand. ... So this evidence is offered for rebuttal purposes because this Defendant has opened the door as to his character."

[2] Appellant testified that his only criminal history involved a few driving-related offenses.

[3] Jobethany purportedly held a grudge against Appellant because he covered for her husband's infidelity during their marriage.

You are further instructed that if there is any testimony before you in this trial regarding the defendant's having committed extraneous conduct, acts, or offenses other than the offense alleged against him in the indictment, you cannot consider said testimony for any purpose unless you first find and believe beyond a reasonable doubt that the defendant committed such other offenses, if any were committed, and even then you may only consider the same in determining the motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of duress, mistake or accident, if any, in connection with the offense, if any alleged against him in the indictment in this case. You cannot consider said testimony for purposes of showing general character conformity on the part of the defendant, or that he acted in conformity therewith, except for determination of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of duress, mistake or accident, if any, in connection with this offense, if any alleged against him in the indictment in this case, and for no other purpose.

Therefore, we will limit our review to that theory. *See Owens v. State*, 827 S.W.2d 911, 917 (Tex.Crim.App. 1992)(even assuming a defensive theory was raised at trial, it was not presented before the jury in the trial court's limiting instruction; absent such additional instruction, there is no way for an appellate court to know whether the jury properly applied the evidence or relied on it for an improper basis such as character conformity); *Prescott v. State*, 744 S.W.2d 128, 133 (Tex.Crim.App. 1988)(the limiting instruction given in the charge to the jury did not limit the use of defendant's prior felony conviction to impeachment only; the trial court erroneously overruled such request by defense counsel); *Curtis v. State*, 89 S.W.3d 163, 170-71 (Tex.App.--Fort Worth 2002, pet. ref'd)(jury was not instructed to consider the extraneous offense evidence to rebut defendant's defensive theory or as evidence of consciousness of guilt, therefore, appellate court only addressed whether evidence was properly admitted on at least one of issues which jury was instructed).

With regard to accident or mistake, Appellant testified:

Q:     Well, you said that [A.J.] was on your lap at one point?

A:     Yes.

Q:     Did anything happen there that maybe she could have misinterpreted somehow; do you remember?

A:     I don't think so, no.

.     .     .

Q:     Okay. Now when she was sitting on your lap, that's when she said you stuck your hand down her pants underneath her underwear and tried to touch her. Did anything happen like that? I mean, did you move your hand around on her for any reason?

A:     Like grabbing her, like a bear hug or something like that.

Q:     Okay, like playing around?

A:     Yes.

Q:     Well, I mean, is this something you also do with Calvarius, play around with him like that?

A:     Yes.

These statements suggest that Appellant routinely "played around" with other children, that any inappropriate touching was accidental, and that A.J. misunderstood when he "grabbed" her "like a bear hug." Christy bolstered this theory when she testified that Appellant was frequently with A.J.'s cousins, that she had not heard of Appellant misbehaving with any of them, and that she did not believe A.J.'s allegations. Appellant clearly placed his "playing around" in issue, and then emphasized it by proclaiming that he had "nothing to hide." We perceive no abuse of discretion in the admission of the extraneous offenses to establish that the touching was not merely accidental. *Rodriguez*, 203 S.W.3d at 841(we are required to uphold the trial court's decision when its decision is within the zone of reasonable disagreement). We overrule Issue Two.

*Hearsay*

In his third issue, Appellant complains that nurse Goldberg was allowed to testify about

statements A.J. made to her. This occurred when the trial court permitted her to read a transcription of A.J.'s statements to the jury.

Hearsay is a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." TEX.R.EVID. 801(d). Hearsay is not admissible except as provided by statutes or rules. TEX.R.EVID. 802. Rule 803(4) provides an exception for:

> [s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment.

TEX.R.EVID. 803(4). This exception is based on the assumption that the patient understands the importance of being truthful with medical personnel to receive an accurate diagnosis and treatment. *Beheler v. State*, 3 S.W.3d 182, 189 (Tex.App.--Fort Worth 1999, pet. ref'd).

The presumption of reliability that forms the basis for this exception may break down if very young children do not understand the importance of being truthful. *Id.* "Nevertheless, there is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply." *Id.* Rather, the reviewing court must look to the record to see if it supports the conclusion that the young child understood why she needed to be honest when speaking to the caregiver. *Id.* It is not necessary for the witness to have used magic words, such as, "diagnosis" or "treatment." *Id.* It is sufficient that the evidence reflects the statements were made for the purpose of medical diagnosis and treatment. *Id.*

Goldberg testified that one of the first steps of the SANE exam is to take a history in writing of everything the child says. The purpose is to determine if the child is in need of further medical assistance, such as emergency treatment or counseling which the center provided. Absent the oral

history, Goldberg would not know whether anything was physically wrong with the child and if so, the nature of the problem. At trial, Goldberg read A.J.'s statement:

> At Aunt Christy's home we were watching Shrek II and my Uncle Jerald put his hand on my stomach. I tried to move to the other couch. He got into my underwear and he started rubbing against my privates and it didn't feel very good. I said 'Stop it' real loud and he didn't say nothing. I told my cousin, Stephanie, and then I told my Mommy. I didn't tell Mommy first, because I thought she might be mad at me, but I just couldn't keep it inside.

Goldberg mentioned that A.J. corrected her on how to spell "Shrek" and if she made any other mistakes, A.J. was able to correct her.

Appellant likens Goldberg's testimony to the case of *Salinas v. State*, 166 S.W.3d 368 (Tex.App.--Fort Worth 2005, pet. ref'd). There, the Fort Worth Court of Appeals determined the doctor was allowed to testify that she diagnosed sexual abuse based solely upon the history provided by the complainant. *Id.* at 370. But Goldberg did not make a diagnosis of sexual assault based upon A.J.'s testimony. Because the object of the sexual assault exam is to ascertain whether the child has been sexually abused and to determine if further medical attention is needed, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment. *See Beheler*, 3 S.W.3d at 189. Finding the trial court's ruling to be within the zone of reasonable disagreement, we find no abuse of discretion. We overrule Issue Three.

### ELECTION

Finally, Appellant argues the trial court erred in failing to require the State to elect between offenses. Appellant was charged in one indictment on Count I (aggravated sexual assault of a child) and Count II (indecency with a child) that arose from the same transaction. Because the evidence only shows one criminal act against the same victim, Appellant maintains the State was not entitled to seek conviction of both aggravated sexual assault of a child and indecency with a child.

The Court of Criminal Appeals has determined that where only one offense is committed by the defendant, the State should elect to proceed with either aggravated sexual assault or indecency with a child, or, in the alternative, to submit the offense of indecency with a child as a lesser-included offense of aggravated sexual assault. *Ochoa v. State*, 982 S.W.2d 904, 907-08 (Tex.Crim.App. 1998). Here, the charge read:

> Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof, that the defendant is guilty of Aggravated Sexual Assault of a Child, you will acquit the defendant of Aggravated Sexual Assault of a Child and next consider the following:

## COUNT II

### INDECENCY WITH A CHILD

Now, if you find from the evidence beyond a reasonable doubt that on or about the 7th day of February, 2005, in Collin County, Texas, the defendant, **JEREMY JEROME JOHNSON**, did then and there intentionally or knowingly, with the intent to arouse or gratify the sexual desire of said defendant, engage in sexual contact by touching part of the genitals of [A.J.], a child younger than seventeen (17) years of age and not the spouse of the defendant, by means of defendant's hand, then you will find the defendant guilty of Indecency with a Child as charged in the indictment.

If you find from the evidence beyond a reasonable doubt that the defendant is guilty of Aggravated Sexual Assault of a Child or Indecency with a Child, but you have a reasonable doubt as to which offense he is guilty, then you must resolve that doubt in the defendant's favor and find him guilty of the lesser offense of Indecency With a Child.

Unless you so find from the evidence beyond a reasonable doubt or if you have a reasonable doubt thereof that the defendant is guilty of any offense defined in this charge, you should acquit the defendant and say by your verdict 'not guilty.'

Based upon the jury charge, the State submitted indecency with a child as a lesser-included offense.

*Ochoa*, 982 S.W.2d at 908.  Finding no error, we overrule Issue Four and affirm the judgment of the trial court.

May 22, 2008

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.

(Do Not Publish)