**Opinion filed August 13, 2009**



In The

# Eleventh Court of Appeals

––––––––––

## No. 11-07-00306-CR

––––––––––

### JOSE ANGEL SOLIZ, Appellant

### V.

### STATE OF TEXAS, Appellee

**On Appeal from the 385th District Court**

**Midland County, Texas**

**Trial Court Cause No. CR33156**

### M E M O R A N D U M   O P I N I O N

The jury convicted Jose Angel Soliz of aggravated sexual assault of a child and assessed his punishment at eighteen years confinement and a $10,000 fine. We affirm.

In his first and second issues on appeal, appellant argues that the evidence is legally and factually insufficient to support his conviction. To determine if the evidence is legally sufficient, we must review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979); *Jackson v. State*, 17 S.W.3d 664 (Tex. Crim. App.

2000).  To determine if the evidence is factually sufficient, we must review all of the evidence in a neutral light and determine whether the evidence supporting the verdict is so weak that the verdict is clearly wrong and manifestly unjust or whether the verdict is against the great weight and preponderance of the conflicting evidence.  *Watson v. State*, 204 S.W.3d 404, 414-15 (Tex. Crim. App. 2006); *Clewis v. State*, 922 S.W.2d 126, 129 (Tex. Crim. App. 1996).  We review the factfinder's weighing of the evidence and cannot substitute our judgment for that of the factfinder. *Cain v. State*, 958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); *Clewis*, 922 S.W.2d at 135.  Due deference must be given to the jury's determination, particularly concerning the weight and credibility of the evidence.  *Johnson v. State*, 23 S.W.3d 1 (Tex. Crim. App. 2000); *Jones v. State*, 944 S.W.2d 642 (Tex. Crim. App. 1996).  This court has the authority to disagree with the factfinder's determination "only when the record clearly indicates such a step is necessary to arrest the occurrence of a manifest injustice."  *Johnson*, 23 S.W.3d at 9.

A.B. is appellant's stepson.  Linda, A.B.'s paternal grandmother, testified at trial that she has a close relationship with A.B. and that she picks him up from school everyday.  On November 13, 2006, when Linda picked up A.B. from school, A.B. said he needed to tell her something.  A.B. told her that appellant touched his "private part and . . . my butt."  A.B. said appellant touched him while appellant was giving A.B. a bath.  Linda testified that A.B. told her appellant touched A.B.'s "butt" with appellant's penis.  Linda stated that A.B. was crying when he told her what appellant had done to him.  A.B. said that appellant had touched him four or five times, and A.B. gave Linda details on where the incidents took place.  Linda called A.B.'s maternal grandmother and A.B.'s aunt.  A.B. told his maternal grandmother and aunt that appellant had touched him inappropriately, and they called the police.  A.B. was interviewed that day at the Children's Advocacy Center.

A.B. testified at trial that appellant had touched A.B.'s private with appellant's hand three different times.  One incident occurred while A.B. was in the bathroom, and another incident occurred when appellant had A.B. stand up on the couch.  A.B. also testified that, while in the bathtub with appellant, appellant touched A.B.'s "butt" with appellant's "private" and that appellant's "private" went inside of A.B.'s "butt." Appellant threatened to hit A.B. with a belt if A.B. told anyone.

Cori Armstead, coordinator of the Sexual Assault Nurse Examiner program at Midland Memorial Hospital, testified that she examined A.B. As part of her examination, Armstead obtained a history from A.B. A.B. told Armstead that appellant put his "private" in A.B.'s "butt" three times. Armstead stated that a physical exam did not reveal any sign of trauma but that that was not unusual because the skin around the anus was elastic and made to stretch. Armstead said the physical examination supported the history given by A.B.

Nancy Compton, a detective with the Midland Police Department, testified that she met with Linda and A.B. at the police department and arranged an interview for A.B. at the Children's Advocacy Center. Detective Compton spoke with Linda in detail about the allegations against appellant. Detective Compton testified that A.B.'s interview was consistent with the information she received from Linda. After meeting with Linda and A.B., Detective Compton went to appellant's residence.

Detective Compton told appellant about the allegations, and she asked appellant to meet her at the police station. Appellant agreed and drove his own vehicle to the police station. Detective Compton testified that she is fluent in Spanish and that she spoke Spanish to appellant. Detective Compton recorded appellant's statement, and that statement was later translated to English. Detective Compton read appellant's statement to the jury. In the statement, appellant said that, while he was taking a bath, his wife asked him to bathe A.B. While in the bathtub, appellant bent over and touched A.B. "wrongfully." Appellant later stated that he touched A.B. "accidentally." Detective Compton testified that, during the interview, appellant used the words "wrongfully" and "accidentally" interchangeably.

Appellant testified at trial that he was taking a bath and that his wife came in and asked him to bathe A.B. with him. Appellant told his wife "no" because he was naked. Appellant said he agreed to bathe A.B. with him because his wife was pregnant and not feeling well. Appellant said that, when he moved A.B., his private accidentally touched A.B.'s backside. Appellant further testified that he used the word "accidentally" throughout his statement and that he never used the word "wrongfully." During cross-examination, appellant admitted that he used the Spanish word "mal" during the interview and also a different Spanish word for accidentally.

Olga Bustamante, a transcriptionist with the Midland Police Department, testified that she was fluent in Spanish and that she translated appellant's statement from Spanish to English. Bustamante stated that appellant said "Lo toque mal," which means "I touched him wrongfully." Bustamante further testified that appellant also used the Spanish word "accidente" during the interview.

A.B. testified that appellant touched his "butt" with appellant's "private" and that it hurt. A.B. stated that appellant's "private" went inside of his "butt." The jury heard evidence that appellant penetrated A.B.'s anus with appellant's sexual organ. The jury, as the trier of fact, was the sole judge of the credibility of the witnesses and of the weight to be given to their testimony. TEX. CODE CRIM. PROC. ANN. art. 36.13 (Vernon 2007), art. 38.04 (Vernon 1979). As such, the jury was free to believe or disbelieve all or any part of any witness's testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). We find that the evidence is both legally and factually sufficient to support appellant's conviction for aggravated sexual assault. Appellant's first and second issues on appeal are overruled.

In his third issue on appeal, appellant argues that the trial court erred in allowing Armstead to testify about her examination of A.B. because it was not shown to be for the purpose of medical diagnosis or treatment of A.B. The trial court's decision to admit evidence is reviewed under an abuse of discretion standard. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001). An appellate court may not reverse that decision unless it falls outside the zone of reasonable disagreement. *Id.*

TEX. R. EVID. 803(4) provides an exception to the hearsay rule for "[s]tatements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." This exception is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment. *Beheler v. State*, 3 S.W.3d 182, 188 (Tex. App.—Fort Worth 1999, pet. ref'd). Appellant specifically argues that the State did not establish both that A.B. knew the purpose in making the statement to Armstead and that A.B. understood the need to be truthful in those statements.

4

Where very young children are responsible for relating information to their healthcare provider, the presumption of reliability that forms the basis for this exception may break down if they do not understand the importance of being truthful. *Beheler*, 3 S.W.3d at 189. Nevertheless, there is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in his statements for the medical treatment exception to apply. *Id.* Instead, the reviewing court must look to the record to see if it supports a conclusion that the young child understood why he needed to be honest when speaking to the caregiver. *Id.* at 190. Likewise, it is unnecessary for the witness to use the magic words "diagnosis" or "treatment." *Id.* at 189. It is sufficient that the evidence reflects that the statements were made for the purpose of medical diagnosis and treatment. *Id.*

Armstead testified that she explained to A.B. what the exam would entail and that she wanted to make sure no one had hurt him. Armstead stated before the jury that she tells children: "[I]f anyone has hurt you, we want to know, so that we can make sure that it is okay, whether it be with medications or just seeing what happened. . . . [W]e just want to make sure that you are okay, and if there is anything wrong, that we are going to fix it." Outside the presence of the jury, Armstead stated that she gives that explanation to every child she examines and that she gave that explanation to A.B. Armstead testified before the jury that she elicited information from A.B. for treatment and diagnosis. She testified that, after she explained the purpose of the exam to A.B., she asked, "Do you know why you are here?" A.B. responded, "Because [appellant] touched my privates." The trial court did not err in allowing Armstead's testimony for the purposes of medical diagnosis and treatment. Appellant's third issue on appeal is overruled.

The judgment of the trial court is affirmed.


JIM R. WRIGHT
CHIEF JUSTICE

August 13, 2009

Do not publish. *See* Tex. R. App. P. 47.2(b).

Panel consists of: Wright, C.J.,
McCall, J., and Strange, J.

5