**Affirmed and Memorandum Opinion filed December 22, 2011.**



**In The**

# Fourteenth Court of Appeals

## NO. 14-10-00524-CR

**CARLOS ALVARADO, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 248th District Court
Harris County, Texas
Trial Court Cause No. 1230086**

## M E M O R A N D U M   O P I N I O N

Appellant, Carlos Alvarado, appeals his conviction of continuous sexual abuse of a young child. In his sole issue, appellant contends the trial court erred by admitting hearsay statements made by the complainant to a physician. We affirm.

### BACKGROUND

The complainant, M.P., testified that appellant forced her to engage in vaginal intercourse with him on numerous occasions over a period of about ten months, during

which she turned thirteen years old.[1] At the time of the incidents, appellant was involved in a long-term relationship with M.P.'s mother, and the three had lived together in Houston since M.P. was four years old. Most of the incidents occurred in appellant's truck in a field where he was teaching M.P. to drive, a hotel room appellant rented for this sexual activity, or an abandoned apartment building, but the last act occurred in M.P.'s bathroom at their home. During this period, M.P. did not report the incidents to her mother because appellant threatened that the mother would "suffer the consequences."

M.P.'s mother eventually became suspicious and inquired. However, M.P. denied any sexual activity occurred because she was afraid "he would do something" to her mother. About two weeks after the last incident, appellant entered M.P.'s bedroom, placed a knife on her stomach, and asked whether she reported the incidents to her mother. When M.P. responded "no," appellant threatened, "you know what's going to happen." That night, appellant forbade M.P. and her mother from using the computer or leaving their home. The next day, M.P.'s mother took her from their home under the guise of visiting a neighbor, but they went to a relative's home in another city. When they arrived, M.P. told her mother about the incidents. They then returned to Houston to contact the police.

In a statement to police, which was admitted at trial, appellant acknowledged having sexual intercourse with M.P. on numerous occasions but claimed those acts were consensual. A jury convicted appellant of the charged offense and assessed punishment at thirty-two years' confinement.

**ANALYSIS**

In his sole issue, appellant contends the trial court erred by admitting hearsay

---

[1] *See* Tex. Pen. Code Ann. § 21.02(b), (c)(4) (West Supp. 2011) (providing that person commits continuous sexual abuse of a young child or children if "(1) during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse [including aggravated sexual assault], regardless of whether the acts of sexual abuse are committed against one or more victims; and (2) at the time of the commission of each of the acts of sexual abuse, the actor is 17 years of age or older and the victim is a child younger than 14 years of age.").

statements made by M.P. to a physician. We review a trial court's decision to admit evidence under an abuse-of-discretion standard. *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). The trial court does not abuse its discretion unless its ruling lies outside the zone of reasonable disagreement. *Id.*

After the incidents were reported to the police, a physician at Harris County Children's Assessment Center initially interviewed M.P. and then performed a sexual-assault examination. The physician was out of the country at the time of trial. Therefore, the State presented testimony from Dr. Michelle Lyn, who is a pediatrician and medical director of the clinic at the center but did not examine M.P. During Dr. Lyn's testimony, the State offered the center's records pertaining to M.P.

Outside the jury's presence, appellant first lodged a general "objection" to admission of one portion of the records: the examining physician's summary of the initial interview. Before appellant could articulate a specific basis, the trial court overruled the objection, remarking, "[i]t appears to go within the exception of answers to a medical doctor's questions for purposes of medical diagnosis." Then, to ensure his objection was clear for the record, appellant stated, "hearsay, hearsay not subject to the business records exception." The trial court again overruled the objection.

Dr. Lyn then testified that such an interview is conducted to obtain a medical history for purposes of diagnosis and treatment and the history is "one of the most important" aspects in making a diagnosis. Dr. Lyn recited the summary of M.P.'s interview, which stated as follows:

Can you tell me why you are here today?

"My mom's boyfriend abused me." WHAT DO YOU MEAN? "He - he took me to the place -well, I don't know how to say." OK. WHAT HAPPEEND [sic] AT THE PLACE? "First, he parked where there were a lot of trees and there wa snobody [sic], then he tried to pull my pants down and he was stronger and he told me to be quiet. Then he started-" [Child becomes tearful. She gestures toward her vaginal area. Looks away, wipes at her eyes.] WHAT PART OF HIS BODY TOUCHED YOU? "His private part touche dme [sic]." DID HE WEAR A CONDOM WHEN HE DID THAT? "Yes." WHEN THAT HAPPENED DID HAT [sic] HURT YOU?

3

"Yes. Yes, a lot." DID YOU NOTICE ANY BLEEDING AFTERWARDS? "Well, a little, but then it just stopped. It was coming out of me-at first I thought it was my period, but my mom told me a period is for like a week." WHEN DID THIS HAPPEN? "I know it was October." HOW OLD WERE YOU? "'Twelve." HAD YOU HAD A PERIOD BEFORE? "No." HOW MANY TIMES DID HE TOUCH YOU THERE WITH HIS PRIVATE PART? [Child shrugs [sic], looks away.] DO YOU KnOW IF IT WAS One TIME, OR MORE THAN ONE TIME? "It was more than one time - but I don't know the number." DID HE EVER PUT HIS PRIVATE ANYPLACE ELSE? "No." DID HE EVER ASK YOU TO TOUCH HIM? "He wanted me to touch his private part but I didn't. I justtook [sic] my hadnout [sic] of his hand." DID ANYTHING EVER COME OUT OF HIS PRIVATE PART? "Yes - some white stuff." WHERE DID THAT STUFF GO? "It was inside the condom." WHEN WAS THE LAST TIME HE TOUCHED YOU THAT WAY? "It was last month, but I don't know exactly the day." DID HE EVER SHOW YOU PICTURES OR MOVIES THAT YOU DID NOT LIKE, OR THAT MADE YOU FEEL UNCOMFORTABLE? "No." HAS ANYBODY ELSE EVER TOUCHED YOU LIKE HE DID? "No. Just him."

[M.P.] also disclosed that he threatened to abduct her, and threatened to harm her mother if she ever disclosed his rape of her. He once threatened [M.P.] with a knife he carries.

Texas Rule of Evidence 803(4) prescribes the following exception to the rule excluding hearsay: "Statements made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4). Appellant does not argue that any of M.P.'s statements fail to constitute "statements" described under Rule 803(4). Rather, his sole contention is that the summary was nevertheless inadmissible because the record did not reflect M.P. was aware of the need for truthfulness in her statements to the physician.

As a preliminary matter, the State contends appellant failed to preserve error because he objected at trial that M.P.'s statements did not satisfy the "business records" hearsay exception, *see* Tex. R. Evid. 803(6), but on appeal contends the statements did

4

not satisfy the Rule 803(4) exception. We disagree. To preserve error for appellate review, a party must present his complaint to the trial court via a timely objection, stating the grounds with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds are apparent from the context. Tex. R. App. P. 33.1(1)(2). A general hearsay objection is sufficient to preserve error regarding admission of hearsay evidence and shifts the burden to the State to prove an exception applies. *Long v. State*, 800 S.W.2d 545, 548 (Tex. Crim. App. 1990) (per curiam); *see Taylor v. State*, 268 S.W.3d 571, 578–79 (Tex. Crim. App. 2008).

Arguably, appellant's initial general objection was sufficient to preserve error because the trial court obviously understood from the context that appellant was advancing a "hearsay" complaint. Nevertheless, appellant's subsequent assertion that the statements were "hearsay" was sufficient to preserve error and shifted the burden to the State to prove applicability of an exception, albeit the trial court had already determined the State met this burden. Because appellant did not bear the burden to negate applicability of any hearsay exceptions and he objected that the statements were hearsay, appellant's also mentioning that they failed to satisfy another exception (Rule 803(6)) was rendered superfluous. Based on his "hearsay" objection at trial, appellant may present an appellate challenge to applicability of the exception under which the trial court actually admitted the evidence.

To support his complaint, appellant relies on *Taylor*, 268 S.W.3d 571, in which the Texas Court of Criminal Appeals addressed whether a child complainant's statements to a professional counselor, who was not a medical doctor, were admissible under Rule 803(4) in a prosecution for sexual assault. The court acknowledged the rationale behind Rule 803(4): a patient's "strong motive" to tell the truth because diagnosis or treatment will depend in part on the patient's statements. *Taylor*, 268 S.W.3d at 580. The court held that the Rule 803(4) exception is not limited to statements to a "medical professional" as long as the declarant believes the information conveyed will ultimately be utilized in diagnosis or treatment of a condition which the declarant is suffering, "so that his selfish motive for truthfulness can be trusted." *Id.* at 587–88. With respect to

this "selfish motive" rationale, the court held that, in the face of a hearsay objection, the proponent of statements made to a mental-health professional for purposes of medical diagnosis or treatment must ensure that the record reflects (1) truth-telling was a vital component of the particular course of therapy or treatment involved, and (2) it is "readily apparent" the child-declarant was aware of this fact. *Id.* at 590.

As appellant acknowledges, the court prescribed this requirement relative to statements made in the course of mental-health treatment. *See id.* Nevertheless, appellant urges that we also apply this requirement to a child's statements to any "medical provider." However, the court actually distinguished statements made in the course of mental-health treatment from statements made to an examining physician:

> [I]t seems only natural to presume that adults, and even children of a sufficient age or apparent maturity, will have an implicit awareness that the [examining physician's] questions are designed to elicit accurate information and that veracity will serve their best interest. This explains the almost universal tendency of courts under these circumstances to assay the record, not for evidence of such an awareness, but for any evidence that would *negate* such an awareness, even while recognizing that the burden is on the proponent of the hearsay to show that the Rule 803(4) exception applies. In the therapist's office, however, this tacit presumption is far less compelling. It is not always so readily apparent (indeed, it may not always be *accurate*) in the mental-health context that truth telling is vital. Not even an older, more mature child (maybe not even an adult) will necessarily recognize and appreciate the necessity (assuming there is a necessity) always to tell a mental-health provider the truth in order to assure the efficacy of treatment.

*Id.* at 589–90 (footnote with citations omitted) (emphasis in original). Because the Texas Court of Criminal Appeals has not required the proponent of Rule 803(4) statements to an examining physician to affirmatively demonstrate the declarant was aware of the need for veracity, we decline to apply such a requirement in this case.

Appellant cites, and we have found, no evidence in the record negating that M.P. was aware of the need for veracity in her statements to the examining physician. Further, although no affirmative showing was required, the following evidence supports an inference that M.P. understood the need for veracity: (1) she was thirteen years old at the

6

time of the examination; (2) at trial, Dr. Lyn explained that an examining physician interviews a child without a parent present to ensure the child feels comfortable to "talk freely" about such a traumatic and taboo event as sexual abuse and the physician can establish a rapport with the child regarding "what we're going to do and why they are here"; and (3) in response to the examining physician's first question, "Can you tell me why you are here today?," M.P. responded that she was present because of the sexual abuse. *See Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd) (concluding evidence supported conclusion that seven-year-old child appreciated need for veracity in interview by sexual-assault nurse examiner and considering fact that nurse interviews a child alone because child is more comfortable and likely to be truthful under such circumstance and child indicated to nurse she understood purpose of interview). Accordingly, the trial court did not abuse its discretion by admitting the summary of M.P.'s interview.

We overrule appellant's sole issue and affirm the trial court's judgment.


/s/     Charles W. Seymore
        Justice


Panel consists of Justices Frost, Seymore, and Jamison.

Do Not Publish — Tex. R. App. P. 47.2(b).