

## NUMBER 13-19-00522-CR

## COURT OF APPEALS

## THIRTEENTH DISTRICT OF TEXAS

## CORPUS CHRISTI – EDINBURG

CASEY COX,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                           Appellee.

### On appeal from the 403rd District Court
### of Travis County, Texas.

## MEMORANDUM OPINION

**Before Justices Benavides, Hinojosa, and Silva**
**Memorandum Opinion by Justice Hinojosa**

A jury convicted appellant Casey Cox of continuous sexual abuse of a child and sentenced him to eighty years' imprisonment in the Texas Department of Criminal Justice. *See* TEX. PENAL CODE ANN. § 21.02. By one issue, Cox argues the trial court abused its discretion when it improperly admitted hearsay testimony under Texas Rule of Evidence 803(4), the hearsay exception to statements regarding medical diagnoses and

treatments. We affirm.

## I. BACKGROUND[1]

Cox was charged by a multi-count indictment on May 9, 2018. Count 1 alleged that Cox committed the offense of continuous sexual abuse of a young child. *See id*. Counts 2 through 7 alleged that Cox committed separate acts of aggravated sexual assault of a child. *See id*. § 22.021(a)(1)(B). Counts 8 through 11 alleged that Cox committed separate offenses of indecency with a child by contact. *See id*. § 21.11(a)(1).

A jury trial began on August 27, 2019. F.M.[2], the complainant who was fifteen years old at the time of trial, testified that she was an infant when her mother and Cox began a relationship. Cox lived with F.M., her mother, and her younger sister (the child of Cox and her mother) in an apartment until F.M. was in seventh grade. F.M. considered Cox her father—she testified that he taught her how to ride a bike, gave her lunch money, asked her about her daily activities, and they watched movies, played board games, and went to church together. Even though her mother and Cox ended their relationship when F.M. was approximately twelve years old, F.M. would still visit Cox at his apartment every Tuesday and every other weekend with her younger sister.

F.M. testified that she was about eight years old when Cox first sexually abused her. She recalled asking Cox about going to the doctor's office. He told her that there was no doctor's appointment but that he could perform a "checkup" on her. F.M. told jurors

---

[1] This case is before this Court on transfer from the Third Court of Appeals in Austin pursuant to a docket-equalization order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001.

[2] To protect the identity of minor children, we refer to the children by their initials or an alias. *See* TEX. R. APP. P. 9.8(a).

2

that Cox took her into his room, laid her on his bed, removed her pants and underwear, spread her legs, put them on his shoulders, and used his finger to touch her vagina. F.M. remembered that when he had finished touching her, he told her to not tell anyone what happened.

After that initial occurrence, Cox began abusing F.M. frequently. F.M. testified that Cox had sexual intercourse with her approximately "one hundred" to "two hundred" times. She also stated that she performed oral sex on him, and he performed it on her. F.M. stated that Cox threatened to take away her pet if she did not comply with his demands. She also testified that she was scared Cox would turn his attention to her sister if she tried to stop him.

The sexual abuse continued until Cox's new girlfriend, Vivica Alvarado, moved into his apartment with him. Several months into their relationship, Alvarado suspected that Cox was cheating on her. In an attempt to determine whether Cox was faithful, Alvarado set up a cell phone in their bedroom to record Cox while she was gone. When she returned to the home later that day, she saw a video recording of Cox asking F.M., "Do you want to fool around?" and then saw him kiss F.M. Alvarado immediately turned the video off and confronted Cox. Although he first denied any wrongdoing, he later admitted to kissing F.M. After this admission, he apologized to both Alvarado and F.M.

Alvarado was not convinced that Cox only kissed F.M., so later that evening she watched the rest of the video. Alvarado testified that the video showed Cox lying on top of F.M. under the covers, moaning. When Alvarado confronted Cox again, stating she had proof that he had sex with F.M., she stated that he grabbed Alvarado's cell phone,

broke it in half, and flushed the SIM card down the toilet. Alvarado did not call the police that night, but she spoke with F.M. and told F.M. that she was there when F.M. was ready to talk.

A month later, F.M. told Alvarado that she was ready to talk. The next day Alvarado went with F.M. to school to report the sexual abuse. Cox was alerted to what was occurring and fled the city. He was later arrested in Fort Worth, Texas pursuant to a warrant.

After F.M.'s outcry, Dr. Katherine Snyder, a child abuse pediatrician and the medical director of the Child Abuse Resource and Education team at Dell Children's Medical Center in Austin, Texas, performed a non-acute medical examination on F.M. At trial, the State offered Dr. Snyder's medical report into evidence without objection and then began questioning her regarding her notes. Dr. Snyder reported that F.M. recalled penile-oral, penile-vaginal, and penile-anal penetration with Cox, causing anogenital pain and genital bleeding. As relevant to this case, Cox contests the admission of certain portions of Dr. Snyder's testimony regarding Cox's requests to take videos or photographs of F.M. The following colloquy occurred at trial:

> State: Did she ever mention if the defendant would try to take videos or photographs of her?
>
> Dr. Snyder: She did.
>
> Defense: Judge, I'm going to object to that as hearsay because that is not covered by the medical exemption [sic].
>
> State: It is actually part of the history in the medical chart.
>
> The Court: It's in the—is it in the report?

4

Dr. Snyder:     It is.

The Court:      As part of your diagnosis?

Dr. Snyder:     Yes.

The Court:      I will overrule since she says it's part of the diagnosis.

Dr. Snyder:     She said that he would try to do that but that she would not let him do that and told him that if he tried to do that, [s]he would tell—she would tell her mother to check his phone. And then she told me that [her] stepdad's girlfriend at the time or ex-girlfriend, I can't remember, had set up a phone, like a hidden phone and that that was—

Defense:        Judge, I'm going to object to this, too, because this is clearly not part of any kind of medical diagnosis.

The Court:      I don't think that—I think it is going far afield. I'm going to sustain that part of the objection as to that aspect.

Defense:        I'd ask for an instruction that the jury disregard that question and partial answer.

The Court:      Disregard the last question and answer. You are supposed to—like you didn't hear it. So you can't consider it for any purpose. Go ahead.

Defense:        May we approach briefly on that quickly?

The Court:      Sure.

(At the bench, on the record)

State:          Just for the Court's attention, that is in the medical records so we will have to redact that out, if you want, before that goes back to the jury. That's all.

The Court:      That's fine. Yeah, you can take it out later and clear it up. But for the record, you're agreeing to redact that aspect of it?

State:          Yes.

The Court:      Okay. So that will be done before the jury gets it.

5

The jury found Cox guilty of Count 1,[3] continuous sexual abuse of a child, and sentenced him to eighty years of imprisonment. This appeal followed.

## II. STANDARD OF REVIEW & APPLICABLE LAW

We review a trial court's ruling to admit evidence under an abuse of discretion standard. *See Martin v. State*, 173 S.W.3d 463, 467 (Tex. Crim. App. 2005). Such a ruling is upheld on appeal "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Willover v. State*, 70 S.W.3d 841, 845 (Tex. Crim. App. 2002). Under this standard, a trial court's ruling will be deemed an abuse of discretion only if it is so clearly wrong as to lie outside the zone of reasonable disagreement or is arbitrary or unreasonable. *Taylor v. State*, 509 S.W.3d 468, 472 (Tex. App.—Austin 2015, pet. ref'd) (citing *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002)); *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). This deferential standard of review requires appellate courts to view the evidence in the light most favorable to the trial court's ruling and not substitute its judgment for that of the trial court. *See Riley v. State*, 378 S.W.3d 453, 458 (Tex. Crim. App. 2012).

Hearsay is an out-of-court statement offered by a party to prove the truth of the matter asserted in the statement. *See* TEX. R. EVID. 801(d). Generally, hearsay is not admissible except as provided by the rules of evidence or statutory authority. *See id*. R. 802. Rule 803(4), entitled "Statements for Purposes of Medical Diagnosis or Treatment," provides an exception to the hearsay rule. *Id.* R. 803(4). This rule sets forth that a

---

[3] The jury charge instructed the jurors to abandon Counts 2 through 11 if they found Cox guilty of Count 1, continuous sexual abuse of a young child. *See* TEX. PENAL CODE ANN. § 21.02.

statement that is made for and is reasonably pertinent to a medical diagnosis or treatment and describes medical history, past or present symptoms or sensations, their inception, or their general cause, is admissible into evidence regardless of whether the declarant is available as a witness. *See id*.

Rule 803(4) "is based on the assumption that the patient understands the importance of being truthful with the medical personnel involved to receive an accurate diagnosis and treatment." *See id*.; *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). The proponent of the statement to be admitted must show that the out-of-court declarant knew that the statement was made for a medical diagnosis or treatment. *See Taylor v. State*, 268 S.W.3d 571, 588–89 (Tex. Crim. App. 2008). The proponent must also demonstrate the declarant's understanding that their statement must be truthful so that the medical provider can reasonably rely on their information. *See id.* at 589; *see also In re C.B.L.*, No. 11-15-00227-CV, 2016 WL 5853196, at *2 (Tex. App.—Eastland 2016, pet. denied) (mem. op., not designated for publication).

### III.     ANALYSIS

By his sole issue, Cox complains that the trial court abused its discretion when it allowed Dr. Snyder to testify that, during F.M.'s medical examination, F.M. stated that Cox wanted to take videos and photographs of her. Cox contends the State did not fulfill its burden in showing that that information was pertinent or necessary to the doctor's diagnosis under Texas Rule of Evidence 803(4). *See* TEX. R. EVID. 803(4); *Taylor*, 268 S.W.3d at 588–89. He also argues that the State did not carry its burden in showing that F.M. understood the importance of being truthful with the doctor. *Taylor*, 268 S.W.3d at

7

589. Cox concludes that the admission of this information was "the only testimony admitted before the jury that suggested that [Cox] wanted to film or video F.M." and this was "extremely damaging" and caused substantial harm.

The record, however, reflects that Dr. Snyder's questions to F.M. during their encounter were aimed for the purpose of medical diagnosis and treatment:

> State: And then based upon what you learn from the history and everything else, what do you do?
>
> Dr. Snyder: So it depends. Right? So I'm collecting information about what has brought you to the clinic and then at that point I may decide, okay, we need to do some images or I may decide, hey, we need to do some laboratory testing or I may make additional recommendations for follow-up. I may refer you to therapy or I may refer you to see another specialist if there are certain things going on. So it just depends on where I am at the end of the evaluation that I have completed what I do next.

F.M.'s disclosure to Dr. Snyder that Cox wanted to take photos or videos of F.M. was in the context of a medical examination. Texas courts have held that statements describing abusive acts are pertinent to medical diagnosis and treatment. *See Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd) (holding that rule 803(4) covered statements describing penile-anal and penile-oral penetration, and that the complainant thought defendant was "so sick" that he "made her want to puke" when he made her watch pornography); *Turner v. State*, 924 S.W.2d 180, 189 (Tex. App.—Eastland 1996, pet. ref'd) (allowing the treating doctor to testify about the child complainant's reports of penetration). "The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed." *Beheler*, 3 S.W.3d at 189. Of note, both F.M. and her mother testified

8

at trial that F.M. was in weekly therapy due to the sexual abuse and trauma she endured from the father figure in her life.

Cox further relies on *In re C.B.L.* to argue that the objected-to statements are not admissible under Texas Rule of Evidence 803(4) because F.M. was not made aware of the importance of being truthful in the history she gave the doctor. *See In re C.B.L.*, 2016 WL 5853196, at *3. Cox's reliance on *In re C.B.L.* is misplaced. The "crucial issue" in *In re C.B.L.* is whether Texas Rule of Evidence 803(4) applies in the context of a non-medical examination. *See id*. at *2 (holding that this hearsay exception applies to therapists as long as the statement is made for medical reasons, and noting that courts have applied the exception to statements revealed to licensed professional counselors, social workers, paramedics, and psychologists, among others). Moreover, we note "there is no requirement that a witness expressly state that the hearsay declarant recognized the need to be truthful in her statements for the medical treatment exception to apply." *Beheler*, 3 S.W.3d at 188–89. Instead, the reviewing court must look to the record to see if it supports a conclusion that the child understood why she needed to be honest when speaking to the caregiver. *Id*. Upon review of the record, Dr. Snyder testified that what F.M. told her during the medical examination "was very similar to information that was disclosed during the forensic interview, and so [Dr. Snyder's] diagnosis was that this was consistent with the diagnosis of sexual abuse." F.M.'s recollection was consistent, arguing in favor of her veracity. In addition, at the conclusion of F.M.'s testimony at trial, when she was asked, "Is everything you said here true?", she responded, "Yes." In light of the foregoing, we conclude the record supports that F.M. understood the need to be truthful

9

to her physician.

Lastly, even assuming without deciding that the admission of Dr. Snyder's testimony regarding Cox's desire to take photographs or videos was error, we cannot say it was harmful. *See* TEX. R. APP. P. 44.2(b); *Gonzalez v. State*, 544 S.W.3d 363, 373 (Tex. Crim. App. 2018). "Any error in admitting evidence is cured where the same evidence comes in elsewhere without objection." *Duncan v. State*, 95 S.W.3d 669, 672 (Tex. App.— Houston [1st Dist.] 2002, pet. ref'd) (citing *Hudson v. State,* 675 S.W.2d 507, 511 (Tex. Crim. App. 1984)). Dr. Snyder's written medical report was offered into evidence as State's Exhibit 11 without redaction and with no objection from the defense *before* the State began questioning her about its contents.[4] In the medical record, Dr. Snyder recorded that F.M. recalled "he [Cox] would try to get photo/videos, but she always refused and told him if he did, she would have her mother search his phone."

The erroneous admission of evidence is generally considered non-constitutional error subject to harm review under Rule of Appellate Procedure 44.2(b). *See* TEX. R. APP. P. 44.2(b). Under Rule 44.2(b), error is not harmful unless it affects the defendant's substantial rights. *See id.*; *Walters v. State*, 247 S.W.3d 204, 218–19 (Tex. Crim. App. 2007). The defendant's substantial rights are affected if the error had a substantial and injurious effect or influence on the jury's verdict. *Rich v. State*, 160 S.W.3d 575, 577 (Tex. Crim. App. 2005). In assessing whether the error affected the defendant's substantial rights, the reviewing court examines the record as a whole. *Motilla v. State*, 78 S.W.3d

---

[4] Cox acknowledges as much in his brief, noting that "a review of State's Exhibit 11, the child's medical records[,] show that the redaction ordered by the trial court was not done. Unfortunately, trial counsel did not object to the State's failure to redact the medical records . . . ."

10

352, 355 (Tex. Crim. App. 2002). If, after doing so, the reviewing court has fair assurance that the error did not influence the jury or had but a slight effect, the error did not affect the defendant's substantial rights. *Id.* Here, in light of the detailed testimony from F.M. and Alvarado, as well as the fact that the medical report had already been entered into evidence without objection, we conclude that Cox's substantial rights were not affected.

"The law in Texas requires a party to continue to object each time inadmissible evidence is offered." *Ethington v. State*, 819 S.W.2d 854, 858 (Tex. Crim. App. 1991). Because Cox did not object to the admission of Dr. Snyder's written medical report which documented these allegations, her subsequent verbal testimony regarding Cox's desire to video and photograph F.M. was thus cumulative and not harmful. *See* TEX. R. APP. P. 44.2(b). We overrule Cox's sole issue.

## IV. CONCLUSION

We affirm the judgment of the trial court.

LETICIA HINOJOSA
Justice

Do not publish.
TEX. R. APP. P. 47.2 (b).

Delivered and filed on the
27th day of May, 2021.

11