

# IN THE
# TENTH COURT OF APPEALS

## No. 10-23-00228-CR

**ROY LANDAVERDE,**

**Appellant**

**v.**

**THE STATE OF TEXAS,**

**Appellee**

**From the 19th District Court**
**McLennan County, Texas**
**Trial Court No. 2020-51-C1**

## MEMORANDUM OPINION

A jury found Roy Landaverde guilty of four counts of aggravated sexual assault of a child and assessed punishment at 25 years in prison for each count, each running concurrently with the others. Because trial counsel did not render ineffective assistance and because the trial court did not abuse its discretion in designating the outcry witness, we affirm the trial court's judgment.

**INEFFECTIVE ASSISTANCE OF COUNSEL**

In his first and second issues, Landaverde asserts that his trial counsel failed to

render effective assistance on two separate occasions when counsel failed to object to hearsay and expert opinion testimony.

*Law*

To prevail on a claim of ineffective assistance of counsel, an appellant must satisfy a two-prong test. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). First, the appellant must show that counsel was so deficient as to deprive the appellant of his Sixth Amendment right to counsel. *Strickland*, 466 U.S. at 687. To satisfy this first prong, the appellant must show that his counsel's representation was objectively unreasonable. *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011). Second, the appellant must show that the deficient representation was prejudicial and resulted in an unfair trial. *Id.* To satisfy this second prong, the appellant must show there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson*, 9 S.W.3d at 812. A reasonable probability exists if it is enough to undermine the adversarial process and thus the outcome of the trial. *See Strickland*, 466 U.S. at 694; *Mallett v. State*, 65 S.W.3d 59, 62-63 (Tex. Crim. App. 2001).

The appellant bears the burden of proving by a preponderance of the evidence that counsel was ineffective, and an allegation of ineffectiveness must be firmly founded in the record. *Thompson*, 9 S.W.3d at 813. An appellant's failure to satisfy one prong of the test negates a court's need to consider the other prong. *Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009).

As the reviewing court, we look to the totality of the representation and the

particular circumstances of each case in evaluating the effectiveness of counsel. *Thompson*, 9 S.W.3d at 813. Our review is highly deferential, and we presume counsel's actions fall within a wide range of reasonable professional assistance. *Mallett*, 65 S.W.3d at 63.

Further, trial counsel should ordinarily be afforded an opportunity to explain his actions before being denounced as ineffective. *Rylander v. State*, 101 S.W.3d 107, 111 (Tex. Crim. App. 2003). Absent specific explanations for counsel's decisions, a record on direct appeal will rarely contain sufficient information to evaluate or decide an ineffective-assistance-of-counsel claim. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). Thus, to warrant reversal without affording counsel an opportunity to explain his actions, "the challenged conduct must be 'so outrageous that no competent attorney would have engaged in it.'" *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007) (quoting *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005)).

In this case, on neither occasion was trial counsel afforded an opportunity to explain his actions. Thus, we look to see whether counsel's alleged failure to object was "so outrageous that no competent attorney would have engaged in it." *Id.*

### *Hearsay*

Landaverde first claims his trial counsel rendered ineffective assistance when counsel failed to object to hearsay statements from B.B., the child victim, through the testimony of a physician which were allegedly not made in connection with a valid medical diagnosis pursuant to Texas Rule of Evidence 803(4). Landaverde contends that since B.B. would not submit to a genital examination, it was questionable as to whether

B.B. was presented to the physician for the purpose of medical treatment and diagnosis. Thus, his argument continues, if B.B. was not presented to the physician for the purpose of medical treatment and diagnosis, the physician's testimony as to B.B.'s statements was inadmissible hearsay, and trial counsel should have objected.

Dr. Soo Battle is a pediatrician with the Advocacy Center for Crime Victims and Children. She explained that children who have been sexually, emotionally, or physically abused are referred to the Center by law enforcement or Child Protective Services. Those children first participate in a forensic interview at the Center. If a child has been sexually assaulted more than five days prior to the referral, the child goes to Dr. Battle for a "delayed outcry medical exam." Dr. Battle stressed that she does not conduct a medical exam to obtain specific information on behalf of CPS or law enforcement. The purpose of the medical evaluation, as she had explained to B.B., was to confirm that B.B.'s body was healthy. Even though there may not be any scientific evidence, Dr. Battle explained, other health concerns are still present which need to be evaluated if the child was sexually abused. Such concerns include sexually transmitted infections, pregnancy, anxiety or fear about the child's body, or mental, behavioral, and emotional signs and symptoms. During the medical exam, Dr. Battle checked B.B. for gonorrhea, chlamydia, and pregnancy. The results of those tests were all negative.

Dr. Battle always tells the children she examines that if the child does not want her to do any part of the exam, she will not do it. She does not want to cause any more trauma to the child. In this case, B.B. refused the genital exam. Dr. Battle estimated that about 10-20 of the patients she has seen have refused the genital exam. Dr. Battle explained that

even if a genital exam is performed, 90 to 95 percent of children who have been sexually abused have normal exams. She further explained that typically, in the vast majority of children, there is no way to know by looking at their genitalia whether or not they have been penetrated.

A statement that is made for, and is reasonably pertinent to, medical diagnosis or treatment and describes medical history, past or present symptoms or sensations, their inception, or their general cause is an exception to the rule against hearsay. TEX. EVID. R. 803(4). "The object of a sexual assault exam is to ascertain whether the child has been sexually abused and to determine whether further medical attention is needed. Thus, statements describing acts of sexual abuse are pertinent to the victim's medical diagnosis and treatment." *Beheler v. State*, 3 S.W.3d 182, 189 (Tex. App.—Fort Worth 1999, pet. ref'd); *accord Turner v. State*, 924 S.W.2d 180, 182 (Tex. App.—Eastland 1996, pet. ref'd); *see also Macias v. State*, 776 S.W.2d 255, 259 (Tex. App.—San Antonio 1989, pet. ref'd) (holding that Rule 803(4) "has been interpreted to allow a physician to testify to a child's statements relevant to the external event causing an injury").

After reviewing Dr. Battle's testimony, we conclude a medical exam within the meaning of Rule 803(4) was conducted. Accordingly, counsel's alleged failure to object to B.B.'s statements as testified to by Dr. Battle was not "so outrageous that no competent attorney would have engaged in it," *Roberts v. State*, 220 S.W.3d 521, 533-34 (Tex. Crim. App. 2007), and Landaverde failed to prove his trial counsel rendered ineffective assistance in this instance.

Landaverde's first issue is overruled.

*Expert Opinion Testimony*

Landaverde also contends his trial counsel should have objected to the testimony of, Dr. William Lee Carter, a State's witness, because Dr. Carter's testimony was presented only to bolster B.B.'s credibility. Landaverde points to three specific instances in the record where he believes Dr. Carter bolstered B.B.'s credibility.

Dr. Carter, a licensed psychologist, had performed psychological evaluations and court services, *i.e.* parole evaluations, juvenile offender evaluations, and competency evaluations, for the last 21 years. He was called as a witness in this case to give the jury an understanding of why children who have been abused might act a certain way or say certain things. Necessarily, Dr. Carter used B.B.'s actions, inactions, and statements to give the jury a general understanding of why B.B. might have acted in a certain way or said certain things, not to inform the jury that B.B. was telling the truth. For example, the following question and answer between the State and Dr. Carter took place after Dr. Carter began to evaluate B.B.'s testimony:

> Q. And you're not here to tell the jury what happened or not. You're here mainly to explain the dynamics of this world of child abuse; is that right?
>
> A. Correct. And in making that statement I just made, I guess what I'm highlighting is that he took control of the relationship. Control is almost always a central word in child sex abuse cases.

The tenor of Dr. Carter's testimony was to explain "the world of child abuse" as it pertained to B.B., not to give credence to her testimony. Thus, in reviewing Dr. Carter's testimony, counsel's alleged failure to object to any of that testimony was not "so outrageous that no competent attorney would have engaged in it," *Roberts v. State*, 220

S.W.3d 521, 533-34 (Tex. Crim. App. 2007), and Landaverde failed to prove his trial counsel rendered ineffective assistance in this instance.

Landaverde's second issue is overruled.

## OUTCRY WITNESS

In his third issue, Landaverde asserts the trial court abused its discretion in designating an outcry witness pursuant to article 38.072 of the Texas Code of Criminal Procedure. Landaverde complains in this issue that the State did not prove B.B.'s counselor, Adreanne Dugger, was the proper outcry witness when B.B. had earlier made an outcry to her friend, September, and the evidence conflicted as to whether September was an adult.[1] Thus, he argues September was the proper outcry witness, and the trial court abused its discretion in permitting Dugger to testify as the outcry witness.

Article 38.072 governs the admissibility of certain hearsay evidence in trials for specified crimes against a child younger than fourteen years old. *See* TEX. CODE CRIM. PROC. art. 38.072. The statute creates a hearsay exception and allows testimony of the first adult in whom a child confides regarding sexual or physical abuse. *See id*. at 38.072 § 2(a)(3); *Martinez v. State*, 178 S.W.3d 806, 810-11 (Tex. Crim. App. 2005). The child's statement to the adult is commonly known as the "outcry," and the adult who testifies about the outcry is commonly known as the "outcry witness." *Sanchez v. State*, 354 S.W.3d

---

[1] We question whether the State had the burden to prove or disprove September was the proper outcry witness. *See Espinoza v. State*, 571 S.W.3d 427, 432 (Tex. App.—Fort Worth 2019, pet. ref'd) ("*Garcia [v. State*, 792 S.W.2d 88 (Tex. Crim. App. 1990)] appears to have abandoned the general rule that the proponent of evidence bears the burden of proving its admissibility, thus reversing the traditional burden of proof in situations like the one before us, *see* TEX. CODE CRIM. PROC. ANN. art. 38.072, § 2(a)(3) …."). However, a determination of that question is not necessary to the disposition of this issue.

476, 484 (Tex. Crim. App. 2011). The Texas Court of Criminal Appeals has explained that under article 38.072, the proper outcry witness is the first adult person to whom the child describes the alleged offense in some discernible manner beyond general insinuations that sexual abuse occurred. *Lopez v. State*, 343 S.W.3d 137, 140 (Tex. Crim. App. 2011); *see Garcia v. State*, 792 S.W.2d 88, 91 (Tex. Crim. App. 1990).

The trial court has "broad discretion" in determining the admissibility of outcry evidence. *Garcia*, 792 S.W.2d at 92. The exercise of that discretion will not be disturbed absent a clear abuse of discretion. *Id.* A trial court abuses its discretion when it acts arbitrarily, unreasonably, or without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990). We will not reverse a trial court's ruling if it was within the zone of reasonable disagreement, and we must uphold the ruling "if it is reasonably supported by the record and is correct under any theory of law applicable to the case." *Brito Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005).

The trial court held a hearing outside the presence of the jury to determine if Dugger was the proper outcry witness. It was established before the hearing that B.B. was 13 at the time of the assault. At the hearing, Dugger testified on cross-examination that she thought September was only a year or two older than B.B. When she was then asked, "Would it surprise you — would it surprise you to learn that [September] was — I believe she was an adult [,]" Duggar replied that it *would* surprise her.

This question to Dugger on cross-examination and Dugger's corresponding answer do not amount to evidence that September was an adult; and no other testimony

about September's age was brought forth at the hearing.[2]  Thus, there was no conflict in the evidence, and the trial court did not abuse its discretion in designating Duggar as the outcry witness.

Landaverde's third issue is overruled.

**CONCLUSION**

Having overruled each issue on appeal, we affirm the trial court's judgment.


                                        LEE HARRIS
                                        Justice

Before Chief Justice Johnson,
      Justice Smith, and
      Justice Harris
Affirmed
Opinion delivered and filed February 13, 2025
Do not publish
[CRPM]



---

[2] During the trial, the consensus of the testimony revealed that September was either 15 or 16 years old at the time of the alleged outcry; there was no testimony that September was an adult.